# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF WISCONSIN

In re:

MICHAEL A. GRAL,                          Case No. 16-21329-gmh

        Debtor-in-Possession.          Chapter 11

In re:

CAPITAL VENTURES, LLC,                    Case No. 16-21331-gmh

        Debtor-in-Possession.          Chapter 11

In re:

GRAL HOLDINGS KEY BISCAYNE, LLC,          Case No. 16-21330-gmh

        Debtor-in-Possession.          Chapter 11

## MOTION OF BIELINSKI BROS. BUILDERS, INC. FOR DISMISSAL PURSUANT TO SECTION 1112 OF THE BANKRUPTCY CODE OR, IN THE ALTERNATIVE, FOR ABSTENTION PURSUANT TO SECTION 305 OF THE BANKRUPTCY CODE OR, IN THE ALTERNATIVE, FOR APPOINTMENT OF A CHAPTER 11 TRUSTEE PURSUANT TO SECTION 1104 OF THE BANKRUPTCY CODE, AND FOR OTHER APPROPRIATE RELIEF

Bielinski Bros. Builders, Inc. ("Bielinski"), one of the twenty largest unsecured creditors

of Michael A. Gral (the "Debtor"), respectfully moves this Court for an order dismissing these

chapter 11 matters pursuant to section 1104(a)(1) of the United States Bankruptcy Code,

11 U.S.C. § 101 *et seq.* (the "Bankruptcy Code") or, in the alternative, abstaining from

exercising jurisdiction over these chapter 11 matters pursuant to section 305(a)(1) of the

Bankruptcy Code or, in the alternative, directing the appointment of a chapter 11 trustee pursuant

to Bankruptcy Code section 1104(a)(1), 11 U.S.C. §101 *et seq*, or for such other relief as the

Drafted by:
Katherine Stadler, Sean Bosack and Nina Beck
GODFREY & KAHN, S.C.
One East Main Street, Suite 500
Madison, WI 53703
Telephone: (608) 257-3911
Facsimile: (608) 257-0609
E-mail: kstadler@gklaw.com; sbosack@gklaw.com; nbeck@gklaw.com

Court deems just and equitable.  In support of this motion (the "Motion"), Bielinski respectfully states as follows:

These cases were filed on the eve of a Milwaukee County Circuit Court summary judgment hearing and a hearing for civil contempt and sanctions against the Debtor and other members of his family.  Resolution of the claims in the litigation has been nearly seven years in the making.  Based upon the findings and conclusions of the Milwaukee County Circuit Court, discussed herein, ample grounds exist for this Court to find that:

- The Debtor is responsible for substantial and continuing diminution of the estates and has no reasonable likelihood of rehabilitation. §1112(b)(4)(A).

- The Debtor has grossly mismanaged the affairs of the estates—both pre- and post-petition.  *See* §§1112(b)(4)(B) (post-petition mismanagement); §1104(a)(1) (pre- and post-petition mismanagement).

- The Debtor filed the petitions to obtain a tactical advantage with respect to other, pending, litigation. *See In re SGL Carbon Corp.,* 200 F.3d 154 (3d Cir. 1999).

- The Debtor filed the petitions in bad faith.  *See In re South Beach Securities, Inc.*, 606 F.3d 366 (7th Cir. 2010).

- A non-federal insolvency has proceeded so far that it would be costly and time consuming to start afresh with the federal bankruptcy process. *See In re Monitor Single Lift I, Ltd.,* 381 B.R. 455, 464 (Bankr. S.D.N.Y. 2008).

The Debtor's fraud and mismanagement of assets have been to the financial detriment of the Debtor's creditors and provides cause for dismissal, abstention, or—at the very least—the appointment of an independent fiduciary to manage the affairs of the Debtor.  The State Court has concluded that Bielinski is "likely to prevail at trial" on its claims:

At its core [Bielinski] allege[s] that [it is] owed money from the debtor and that the debtor is engaged in bad faith by creating a labyrinth of legal intertwined and inter-dependent [sic] entities that amounts to nothing more than a shell game intended to block any meaningful attempts from the plaintiffs to collect that which is owed to them.

2

February 25, 2016 Affidavit of Nina Beck ("Beck Aff"), ¶ 11, Ex. J at Hr'g. Trans. at 3:10-16, 4:7-15. These and other State Court findings establish that relief under sections 305, 1112, and 1104 is appropriate in these cases.

## INTRODUCTION

These bankruptcy cases seek to forestall the Debtor's day of reckoning in a legal saga dating back to 2006. Bielinski has been attempting to collect several civil judgments against the Debtor (and his father as personal guarantor) arising from mail fraud the Debtor committed against Bielinski while he was a partner at Michael Best & Friedrich in the early 2000s. The Debtor served a two-year federal prison sentence for the crime, but—despite admitting control of considerable assets—has yet to make good on his obligations to Bielinski set forth in a Settlement Agreement that the Debtor executed on the day of his sentencing.

Though the Debtor need not file schedules until March 7, 2016 (and has sought an even further extension of time to file schedules), those schedules will show that the Debtor, although he holds no assets in his own name, directly or indirectly owns various businesses with family members that, in turn, own a substantial portfolio of high-value Milwaukee area commercial real estate, and which he controls for his own benefit. All of the Debtor's assets are held in a revocable trust that directly (and indirectly) owns interests in various other entities, including single-asset real estate entities that the Debtor controls through a management company established upon his release from prison and that he owns via his trust.[1] Because it implicates a

---

[1] Most of these entities, the Debtor's trust, and the Debtor's wife are non-debtors. Only two entities, Capital Ventures LLC and Gral Holdings Key Biscayne, LLC filed chapter 11 petitions contemporaneously with the Debtor. Case Nos. 16-21331-gmh and 16-21330-gmh. Though the Debtor did not list Bielinski as a creditor of the two entities, Bielinski has alleged in State Court proceedings that both of the other debtor entities are mere alter egos of the Debtor and seeks to collect its judgment against them. Beck Aff., ¶ 18, Ex. Q (Bielinski's Summ. J. Br.) The Debtor's trust wholly owns Capital Ventures, LLC and, with his wife and three children, owns (non-debtor) Gral Holdings, Ltd., which, in turn, wholly owns Gral Holdings Key Biscayne, LLC. Capital Ventures LLC owns

*footnote continued on next page…*

3

long history and a complex web of entities and financial transactions, the factual recitation

supporting this Motion is supplemented by two illustrations. First, timelines of pertinent events

set forth the chronology of the Debtor's original crime, Bielinski's collection efforts, the

Debtor's entity formation, transfers, and payments during four separate and sequential time

periods: (1) The Debtor's Pre-Incarceration: 1994-2006; (2) The Debtor's Incarceration: 2006-

2008; (3) The Debtor's Post-Incarceration and Default: 2008-2010; and (4) Bielinski's Current

Collection Efforts: 2010-Present. Beck Aff., ¶ 2, Ex. A. Second, diagrams of entity structures

illustrate the most pertinent portions of the complex web of entities developed by the Debtor and

others during and after the Debtor's incarceration. *Id.*, ¶ 3, Ex. B.

## FACTS[2]

### *The Nature of the Debtor's Debt to Bielinski*

Bielinski is a Pewaukee-based home builder. The Debtor was Bielinski's lawyer. From

approximately 2000 through 2004, the Debtor conspired with Bielinski's former CEO, Robert

Brownell, and others to perpetrate a massive fraud of which Bielinski was the primary victim.

On December 14, 2005, the United States Attorney for the Eastern District of Wisconsin issued a

one-count indictment against the Debtor, charging him with mail fraud in violation of 18 U.S.C.

§ 1341 arising out of his fraudulent billings to Bielinski. The Debtor pled guilty and, on June 15,

---

commercial real estate located at 429 W. Silver Spring Drive, Glendale, Wisconsin that, according to the Debtor's records, has equity. *See* Beck Aff., ¶4, Ex. C at Ex. K (Rally Capital Expert Rpt.). Gral Holdings Key Biscayne, LLC owns a residential condominium in the Ritz Carlton-Key Biscayne worth several hundred thousand dollars in excess of mortgages on such property. *Id.*

[2] Unless otherwise noted, the source for each fact is found in the Second Amended Complaint and Answer to Affirmative Defenses, attached to the Beck Affidavit as Exhibits C and D, respectively. Beck Aff. ¶¶ 4-5, Exs. C-D.

4

2006, United States District Court Judge Charles N. Clevert sentenced the Debtor to two years imprisonment, to be followed by three years of supervised release.[3]

In order to present mitigating factors and to obtain leniency in the federal criminal case, the Debtor agreed to repay Bielinski the funds he had stolen—$3.2 million—plus interest at the rate of 8% per year. This amount included $1,752,000 in criminal restitution, and additional sums characterized as settlement of civil claims that Bielinski could have asserted against the Debtor as a result of his participation in the criminal conspiracy. Ultimately, moments before the Debtor's sentencing, the Debtor, his father (as guarantor), and Bielinski entered into a Settlement Agreement whereby the Debtor agreed to repay his debt to Bielinski over time.

The Debtor made payments to Bielinski contemporaneous with his sentencing, and made other payments at agreed-upon intervals after that. As soon as he was released from prison in 2008, however, the Debtor stopped making payments. Years of Milwaukee County Circuit Court litigation followed, including a collection action against the Debtor and his father (guarantor), judgments, multiple garnishment actions, supplemental proceedings, and ultimately a Uniform Fraudulent Transfer Act ("UFTA"), veil piercing, and conspiracy action against multiple real estate holding entities in which the Debtor, the Debtor's father, and/or the Debtor's brother owns an interest.[4]

---

[3] The Supreme Court of Wisconsin also suspended the Debtor's license to practice law for three years based on his criminal activities as reported in the case *In Re Disciplinary Proceedings Against Gral*, Case No. 2006-AP-1021-D, 2007 WI 22.

[4] In the State Court Fraudulent Transfer Action, Bielinski has moved for partial summary judgment on certain reverse veil piercing, fraudulent transfer, and conspiracy claims. Bielinski's motion was scheduled to be heard on February 24, 2016. Copies of Bielinski's opening and reply briefs in support of its motion are attached to the Beck Affidavit as Exhibits Q and R. Beck Aff., ¶¶ 18-19, Exs. Q-R.

5

As discussed further below, State Court orders illuminate the need for swift relief for creditors in these proceedings. During supplemental examinations following the Collection Action, and in depositions in the Fraudulent Transfer Action, the Debtor testified as to the following facts. Neither he nor his spouse owns a single asset worth more than $300. Beck Aff., Ex. Q at 9. In 2009, approximately 30 days after receiving Bielinski's notice of default under the 2006 Settlement Agreement, the Debtor assigned all of his personal and real property, including his membership interests in LLCs established to own and manage commercial and residential real estate to a Living Trust of which he (with his wife) is both the beneficiary and trustee. *Id.* Since 2009, the Debtor has controlled the trust and property-owning and managing entities in order to funnel cash to his trust to pay all of his personal and family expenses, all the while claiming insolvency when called upon to honor his obligations to Bielinski. *Id.*, at 14-23. Moreover, as recently as January 5, 2016, the Debtor testified that neither he nor his wife have any bank accounts, but instead manage all of their finances through a single bank account titled in the name of their trust. *Id.*, Ex. M at Ex. C at 26:1-16. Notably, absent from the Debtor's February 20, 2016 bankruptcy filings are joint petitions subjecting his Living Trust, or many of the LLCs that he and his trust control and/or own (and from which he has siphoned millions of dollars) to the jurisdiction of this Court. As discussed in more detail below, the Debtor's financial gamesmanship—designed to thwart Bielinski's collection efforts—caused the State Court to issue a series of orders designed to reign in the Debtor's financial abuse. Indeed, these orders and the Debtor's conduct preceding them, justify the relief Bielinski now seeks from this Court.

6

### The Collection Action & Charging Orders

When the Debtor defaulted on his 2006 repayment promise to Bielinski, Bielinski commenced Case No. 09CV1856 (the "Collection Action," currently pending before Judge John DiMotto) to obtain and execute on judgments against the Debtor and his guarantor. In furtherance of that aim, a Milwaukee County Court Commissioner appointed Michael Polsky as supplemental receiver ("Polsky" or "Receiver") on behalf of Bielinski under WIS. STAT. § 816.04.

In August 2014, as a result of a change in the law brought by a Wisconsin Supreme Court decision, *Associated Bank, N.A. v. Collier*, 2014 WI 62, ¶ 45, Bielinski sought to levy execution against the Debtor's interest in multiple Wisconsin LLCs through a charging order. *See* WIS. STAT. §§ 183.0704(1)(b) and 183.0705. Judge DiMotto issued a Charging Order on September 26, 2014, directing twelve Wisconsin LLCs to issue all distributions arising from the Debtor's membership interest to Bielinski until the Debtor's obligation was paid in full. Beck Aff., ¶ 6, Ex. E (Charging Order). Judge DiMotto also appointed Michael Skwierawski as Special Master, pursuant to WIS. STAT. §816.04, and Michael Polsky as Receiver, pursuant to WIS. STAT. §805.06, to determine whether the Debtor's LLC distributions were entitled to any exemption from execution under state law. *Id*. On September 8, 2015, Judge DiMotto amended the Charging Order to include nine newly-discovered LLCs. *Id*., ¶ 7, Ex. F (Amended Charging Order). Unless and until this Court dismisses or suspends these chapter 11 cases or modifies or lifts the automatic stay, the Receiver's and Special Master's monitoring and oversight duties—at least as to the debtors in bankruptcy—arguably ceased on the Petition Date, leaving the Debtor with unfettered control over his portfolio of indirectly-held assets.

7

*The Fraudulent Transfer Action & Freeze Order*

After analyzing the records of Bielinski's collection efforts, conducting additional supplementary proceedings, and attempting to garnish accounts discovered through the supplementary process, Receiver Polsky concluded that the Debtor and guarantor—with the assistance of the Debtor's brother, attorney Donald J. Gral, had transferred all of the Debtor's assets into trust and created a complex network of entities to hold and derive income for Debtor's benefit from real estate assets, and that the Debtor's assets available for attachment and execution could only be identified through a full forensic accounting. *Id.*, ¶ 8, Ex. G (Affidavit of Michael Polsky). As a result, Bielinski commenced Case No. 13-CV-6699 (the "Fraudulent Transfer Action") against the Debtor's trust and a group of additional individuals and entities (including the two co-debtors) seeking the avoidance of fraudulent transfers, remedies for statutory and common law conspiracy, reverse veil-piercing, and findings that many of the Debtor's entities were his alter egos holding assets properly reachable by the Debtor's creditors. The circuit court presiding over the Fraudulent Transfer Action—Judge Mary Kuhnmuench— denied the Debtor's initial Motion for Summary Judgment and determined that it was appropriate to appoint retired Milwaukee County Circuit Court Judge Michael Skwierawski as Special Master pursuant to Wis. Stat. § 805.06 to oversee the forensic accounting process that Polsky had recommended. *Id.*, ¶ 9, Ex. H (Order Appointing Special Master).

Protracted discovery, all under the supervision of Judge Skwierawski as Special Master, resulted in the issuance of a comprehensive forensic accounting report from Rally Capital on March 16, 2015. *Id.*, Ex. C at ¶ 84, Ex. K (Rally Capital Expert Rpt.).[5] Based in part on Rally

---

[5] Rally Capital was retained by Bielinski and prepared its report on Bielinski's behalf. The Debtor did submit his own expert report, but that report failed to credibly refute most of the findings in the Rally Capital Expert Report.

8

Capital's findings, on July 13, 2015, Judge Kuhnmuench issued an "order to show cause why temporary injunctive relief should not be entered freezing all assets in the hands of or under the control of all Parties to this action until [an intervening plaintiff's] motion for the appointment of a receiver can be briefed, heard and decided." *Id.*, ¶ 10, Ex. I (Order to Show Cause).

On July 27, 2015, Judge Kuhnmuench held a hearing on the order to show cause, and issued the following bench rulings:

> [T]he Court finds that the plaintiffs have demonstrated that they will suffer irreparable harm, that there is no adequate remedy at law because the money is the remedy. They have also demonstrated that protecting the status quo of the money and the financials is absolutely necessary. And that based on [the Rally Capital] expert's report, they are likely to prevail at trial.
>
> . . .
>
> [T]he Court imposes a temporary injunction in favor of the plaintiffs. The Court hereby enters a freeze order on all assets in the hands of or under the control of all the named parties to this action. . . No sales, purchases, transfers, distributions or loans of any kind shall be allowed under this order.
>
> The Court is further ordering that receiver, Michael Polsky, shall have the supervised re-authority to monitor on a monthly basis all necessary transactions for the defendant debtors to be able to continue to run their businesses, including but not limited to the payment of rents, taxes, payroll, all that is necessary for the continuation of their ongoing business.
>
> The defendants are hereby ordered to fully cooperate in providing and disclosing all of the information that the receiver requests as a part of his court-ordered supervised re-authority.

*Id.*, ¶ 11, Ex. J (temporary Freeze Order) at Hr'g. Trans. pp. 4:7-15, 6:11-7:4.

Effective August 1, 2015, Judge Glenn Yamahiro was substituted for Judge Kuhnmuench as a result of judicial rotation. *Id.*, ¶ 12, Ex. K (Notice of Assignment). After full briefing and a hearing, Judge Yamahiro entered a permanent Freeze Order on November 16, 2015 adopting Judge Kuhnmuench's findings and conclusions and appointing Polsky as Monitor:

9

4.    [A]ll [ ] Defendants are prohibited from making any sales, purchases, transfers, distributions, advances, or loans of any kind to any entity or party, and all other Defendants are further prohibited from refinancing any existing loans or obligations or incurring any new obligations of any kind.

5.    [T]he Defendants may continue to collect rents and may continue to make expenditures necessary to operate their businesses including, but not limited to, direct mortgage loan obligations, taxes, payroll, maintenance, and other ordinary expenses necessary for the continuation of their ongoing businesses.

6.    Michael Polsky, who serves as the Supplemental Receiver on behalf of Bielinski in the related collection action, shall have continued supervisory authority as the Monitor in this case to review—on a monthly basis—all transactions of the Defendant debtors to ensure that their conduct is consistent with paragraph 5 of this Order, and in compliance with paragraph 4 of this Order.

*Id*., ¶ 13, Ex. L (permanent Freeze Order).

Again, unless and until this Court modifies or lifts the automatic stay, the Receiver's and Special Master's monitoring and oversight duties as to the Debtor and debtor entities arguably ceased on the Petition Date. Even with monitoring, after the November 16 Order, the Debtor has continued to misuse and misappropriate funds. For example, in the course of supplemental discovery on the Debtor's claim for a statutory exemption, the Receiver uncovered that the Debtor had been making payments to his Trust for his own personal benefit from various LLCs in violation of the Freeze Order and the Charging Orders. *Id*., ¶ 14, Ex. M (Monitor's Rpt.).

After conducting a hearing on January 19, 2016, the Special Master issued the Special Master/Referee's Findings, Orders and Recommendations on Defendant Michael A. Gral's Request for Payroll Exemption; and SMR's Certification of Matters to Both Courts for Consideration of Contempt of Court Orders, Findings, and Remedial Sanctions. *Id*., ¶ 15, Ex. N. The Special Master concluded that the Debtor's orchestration of the payment of "pre-paid management fees" from certain real estate holding LLCs to a management company exclusively

10

controlled by Debtor, and the transfer of such Funds to Debtor's Trust, constituted a contemptuous effort to "evade court orders," and recommended remedial sanctions. *Id.* at p. 2. On January 26, 2016, on Special Master Skwierawski's recommendation, Judges DiMotto and Yamahiro issued a joint order consolidating the two Milwaukee County cases for purposes of determining the Special Master's pending request for a contempt finding and sanctions. *Id.*, ¶ 16, Ex. O. A hearing on summary judgment motions on many of Bielinski's fraudulent transfer, conspiracy, veil-piercing, and alter ego claims had been scheduled for Wednesday, February 24, 2015, with a two-week jury trial scheduled for May 31-June 13, 2016. *Id.,* ¶ 17, Ex. P.[6]

Not coincidentally, these bankruptcy cases were filed over the weekend immediately preceding the hearing on the summary judgment motions, and shortly after the Special Master recommended a contempt finding and sanctions against the Debtor. The Debtor's pre-petition conduct gives rise to strong inferences that the bankruptcy filings are simply the next phase of the Debtor's scheme to defraud Bielinski and thwart its collection efforts. Indeed, the Debtor has informed the Milwaukee County courts that all actions against him, his relatives, and his entities (debtor and non-debtor alike) are stayed. The circuit court awaits guidance from this Court on how to proceed.[7]

Unless and until this Court issues an order dismissing the case, abstaining from the exercise of jurisdiction, or lifting or modifying the automatic stay to allow the State Court proceedings to continue, the Debtor will be free to use his debtor-in-possession status to continue his pattern of self-dealing and fraudulent transfers to the further detriment of creditors. If the

---

[6] The Debtor and other defendants had moved for summary judgment, too, though the primary legal argument in support of the motion had previously been rejected by Judge Kuhnmuench. Beck. Aff., Ex. R at 4.

[7] Judge Yamahiro converted the summary judgment hearing scheduled for February 24, 2016 to a status conference, at which he asked the parties to keep him apprised of this Court's rulings and the status of these chapter 11 cases.

Debtor remains in bankruptcy, only a trustee can provide the Court and creditors with assurance that the Debtor's assets will be preserved, maintained, and administered for their benefit.

## DISCUSSION

I.      ***These Cases Should Be Dismissed For Cause and Bad Faith Pursuant to Section 1112(b)(4).***

A moving party bears the initial burden to establish, by a preponderance of the evidence, the existence of "cause" to convert or dismiss a Chapter 11 case. 7 Collier on Bankruptcy ¶ 1112.04[4] (16th ed. rev.). If the movant establishes cause to convert or dismiss—and the Court finds that the exceptions under 11 U.S.C. § 1112(b)(1) and (b)(2) do not apply—the Court *must* convert or dismiss the Chapter 11 case. *Id*.

"In defining the essential role of the cause standard, it is useful to bear in mind the fundamental purposes and limitations of chapter 11 as they relate to section 1112(b)." *Id.*, at ¶1102.4[5].

> The purpose of a business reorganization case, unlike a liquidation case, is to restructure a business's finances so that it may continue to operate, provide its employees with jobs, pay its creditors, and produce a return for its stockholders. The premise of a business reorganization is that assets that are used for production in the industry for which they were designed are more valuable than those same assets sold for scrap.

*Id.* at 1112.04[5][a], *citing* H. Rep. No. 595, 95th Cong. 1st Sess. 220 (1977) and other authorities. Yet "in some instances, the debtor's assets actually may be put to more valuable use in a different application. In these circumstances, permitting the chapter 11 case to continue may be counterproductive and conversion or dismissal may be warranted." *Id.* Section 1112(b) "permits the court to evaluate whether the process [of chapter 11] is worth the effort…." *Id.* at ¶1112.04[5][b].

12

The Court has broad discretion to determine whether cause exists to convert or dismiss under § 1112(b). *In re MF Global Holdings Ltd.,* 465 B.R. 736, 742 (Bankr. S.D.N.Y. 2012); 7 Collier on Bankruptcy ¶ 1112.05[2] (16th ed. rev.) "Cause" includes filings that are in bad faith. *In re South Beach Securities, Inc.*, 606 F.3d 366 (7th Cir. 2010). Nine factors inform the Court's determination of bad faith. Among these factors are whether:

1) the debtor has any assets;
2) the debtor has recently transferred assets;
3) the debtor has any employees;
4) the debtor has any cash flow to sustain reorganization;
5) the debtor has any chance of confirming a reorganization plan;
6) the debtor and one of its creditors have reached a standstill in state court litigation;
7) the debtor is trying to delay its creditors or reduce their rights;
8) there are allegations of wrongdoing by the debtor or its principals; or
9) bankruptcy offers the only possibility of preventing the loss of property.

*In re South Beach Securities, Inc.*, 341 B.R. 853, 856-57 (N.D. Ill. 2006), *citing In re Int'l Oriental Rug Center, Inc.,* 165 B.R. 436, 442–43 (N.D. Ill. 1994).

Here, the record is replete with substantiated allegations of wrongdoing by the Debtor—including paying his trust (but ultimately himself) from non-debtor entities in violation of State Court Orders. The Debtor's schedules, if they are consistent with sworn testimony given in State Court, will show that he has no personal assets of any kind. *See* Beck Aff., Ex. C at ¶ 93; *see id.*, Ex. Q at 6-8, 12 (Bielinski's Summ. J. Br.). Yet the Debtor has transferred millions in assets from various entities to his trust and himself. *Id.*, Ex. Q; *see also id.*, Ex. C at Ex. K.

None of the three debtors in bankruptcy has employees. All of the staff that helps to manage and operate the Debtor's family real estate properties are employed by a non-debtor entity. *See id.*, Ex. M at Ex. C at 20:12-19. Any cash flow generated by the Debtor's family entities (debtor and non-debtor) is controlled by the Debtor, who diverts cash from entities, and

13

ultimately to his trust, based purely on funds available and his immediate need for cash, which he quickly spends. *Id.*, Ex. M at ¶¶ 8-15; *id.*, Ex. R (Bielinski's Reply Summ. J. Br.) at 8-9.

While the Fraudulent Transfer Action was not at a standstill, it *was* at a crucial moment—the eve of summary judgment—when the Debtor chose to commence these proceedings. That he did so without subjecting the bulk of his assets (held through non-debtor entities, including his trust and LLCs established to own and manage real estate for the Debtor's benefit) to this Court's jurisdiction suggests that he was not motivated by a genuine intent to reorganize his financial affairs. *See In re James Wilson Assocs.,* 965 F.2d 160, 170 (7th Cir. 1992) (considering whether debtors were "hoping merely to stave off the evil day when the creditors take control of [their] property.") How could any debtor make a meaningful attempt at reorganization with only a fraction of its available revenue stream to support a restructuring? Where, as here, the Debtor claims to own nothing, not even a checking account, the motive is transparent. The Debtor appears to view chapter 11 as his last best hope of staving off Bielinski, which, at the time of the Debtor's chapter 11 filing, was poised to obtain judgments against the entities owning the millions of dollars' in assets that the Debtor controls, albeit not under his own name.

Nearly every possible indicator of bad faith is present here. Many of the non-exhaustive list of section 1112(b)(4) indicia of "cause" are present too, *see In re Express Freight Lines, Inc.*, 119 B.R. 1006 (E.D. Wis. 1990) (converting case under section 1112(b)(1)), including:

> (A) substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation; [and]
>
> (B) gross mismanagement of the estate[.]

11 U.S.C. §1112(a)(4)(A)-(B).

14

These proceedings are less than a week old, and the Court has not yet seen a first-day motion or affidavit, a schedule, a statement of financial affairs, or an operating report. While it "may be tempting to postpone the decision to convert or dismiss until the conclusion of the confirmation process,"

> …[I]t is a mistake to conclude that consideration of section 1112(b) should begin only after the confirmation process has ended. Care must be taken so that the court's discretion does not inevitably shelter inefficiency and injustice at the expense of the parties or the chapter 11 process as a whole.

7 Collier on Bankruptcy at 1112.04[5][c], *citing authorities*.

The complete "absence of financial data and certain sources of income for the [debtor] indicates the absence of a reasonable likelihood of rehabilitation." *In re Clarkson,* 767 F.2d 417, 420 (8th Cir. 1985). Rehabilitation, it should be noted, is

> different from the ability to propose or confirm a plan of reorganization. While reorganization can involve the complete liquidation of the bankruptcy estate, rehabilitation requires something more. The distinction is significant. Rehabilitation of a debtor's estate implies the re-establishment of a sound financial basis, a concept which necessarily involves establishing a cash flow from which current obligations can be met.

*In re Hunt's Health Care Center, Inc.* 1990 WL 300920 (Bankr. N.D. Ind. 1990) (concluding that the debtor's sole shareholder's comingling of assets, using business funds for personal expenses, and poor recordkeeping constituted gross mismanagement) *and citing In re Kanterman,,* 88 B.R. at 26, 29 (S.D.N.Y. 1988); *In re Vallejo,* 77 B.R. 365, 367 (Bankr. D.P.R. 1987); *In re Zahniser,* 58 B.R. at 530, 536 (Bankr. D. Colo. 1986); *In re Wright Airlines, Inc.,* 51 B.R. 96, 100 (Bankr. N.D. Ohio 1985).

The Debtor has continued to abuse the corporate form, improperly divert assets, and shirk creditor obligations even in the face of State Court monitoring and oversight. *See In re*

15

*Rey*, 2006 WL 2457435 (Bankr. N.D. Ill. Aug. 21, 2006) (granting conversion motion under 1112(b) because of continuing loss and absence of a reasonable probability of confirming a plan). With most of his assets maintained in entities beyond this Court's immediate reach, the Debtor is certain to continue siphoning value from his real estate holdings while in bankruptcy with no "sound financial basis" for a reorganization. *See In re Strug-Division, LLC*, 375 B.R. 445 (Bankr. N.D. Ill. 2007) (dismissing for bad faith because debtor's property-owning LLCs were not brought into bankruptcy). *See also In re Timbers of Inwood Forest Associates, Ltd.,* 808 F.2d 363, 374 (5th Cir. 1987), *aff'd*, 484 U.S. 365, 108 S.Ct. 626, 98 L.Ed.2d 740 (1987) (noting that "[r]eorganization is not a Holy Grail to be pursued at any length").

One important factor in determining a debtor's chances of rehabilitation is the lack of a focused reorganization management team. *In re Gateway Access Solutions, Inc.*, 374 B.R. 556 (Bankr. M.D. PA, 2007) (debtor's sole director lacked time and experience that a successful restructuring would require), *citing In re Broad Creek Edgewater L.P.,* 371 B.R. 752 (Bankr. D.S.C. 2007) (failure to maintain an effective corporate management team has been held to constitute gross mismanagement).

Under the circumstances, it is not hyperbole to conclude that, though the "estate" is young, the Debtor has grossly mismanaged it through his demonstrated and continuing disregard for the process of law. *See, e.g., In re Hoyle*, 2013 WL 210254 (Bankr. D. Id., Jan. 17, 2013) (noting that a wide variety of conduct can establish gross mismanagement, including a failure to attempt to recover property that arguably belonged to the estate and a failure to keep accurate accounting records and control estate cash). The unique circumstances of these cases amply establish the cause and/or bad faith necessary to justify dismissal under section 1112(b) of the Bankruptcy Code.

16

## II. *The Bankruptcy Court Should Abstain from Exercising Jurisdiction, at Least until the State Court Trial Has Concluded.*

"[T]he court, after notice and a hearing, may dismiss a case under this title, or may suspend all proceedings in a case under this title, at any time if— (1) the interests of creditors and the debtor would be better served by such dismissal or suspension."  11 U.S.C. §305(a)(1). "The case law concerning suspension of a bankruptcy case pursuant to § 305(a)(1) is sparse, but there is no dispute that suspension is 'an extraordinary remedy that should be used sparingly and not as a substitute for a motion to dismiss under other sections of the Bankruptcy Code.'" *In re Schur Management Co., Ltd.*, 323 B.R. 123 (Bankr. S.D.N.Y. 2005) (citations omitted).  The test for suspension (as well as dismissal) is whether both the debtor and the creditors would be "better served" by such action. *Id., citing Eastman v. Eastman (In re Eastman),* 188 B.R. 621, 625 (9th Cir. BAP 1995).

In evaluating the best interests of the creditors and the debtor, efficiency and economy of administration are primary considerations. *In re Starbuck, Inc.*, 14 B.R. 134 (Bankr. S.D.N.Y. 1981) (noting that allowing chapter 11 case to proceed when the debtor was already in SEC equity receivership "would result in a terrible waste of time and resources"). A bankruptcy court properly abstains from a chapter 11 case if the outcome of lengthy civil litigation will substantially impact upon the debtor's ability to confirm a plan of reorganization.  *In re Duratech Indus., Inc.*, 241 B.R. 383 (E.D.N.Y. 1999).

Some factors that bankruptcy courts consider to gauge the overall best interests of creditors and debtor include: whether another forum is available to protect interests of both parties or there is already pending proceeding in state court; whether federal proceedings are necessary to reach a just and equitable solution; whether there is alternate means of achieving

17

equitable distribution of assets; and whether a non-federal insolvency has proceeded so far that it would be costly and time consuming to start afresh with federal bankruptcy process. *In re: Northshore Mainland Services, Inc.,* 537 B.R. 192 (Bankr. D. Del. 2015). Courts agree, however, that each case must be decided by its own facts. *See In re Iowa Trust,* 135 B.R. 615, 622–23 (Bankr. N.D. Iowa 1992) ("although [various] tests are useful in determining whether dismissal under § 305(a) is appropriate, courts must look to the facts of the individual cases"), *quoting In re Trina Assoc.,* 128 B.R. 858, 867 (Bankr. E.D.N.Y. 1991).

Application of the overall best interest analysis clearly favors a conclusion to the Fraudulent Transfer Action, which is ripe for determination within 45 days. While the Debtor clearly wishes to delay the inevitable, these bankruptcy proceedings—if they continue at all—will be much less complex and, therefore, much less costly, if this Court is not forced to revisit years of work performed by the State Court Receiver, Special Master, and judges.

Even a temporary suspension of these proceedings to allow the Fraudulent Transfer Action to proceed to judgment will simplify the issues remaining for this Court's consideration if these cases proceed. *See in re Mazzocone,* 183 B.R. 402 (Bankr. E.D. Pa. 1995), *aff'd,* 200 B.R. 568 (E.D. Pa. 1996) (suspending a voluntary Chapter 11 case for six months to allow the parties to litigate their numerous disputes in a pending state court action). In bankruptcy or out, the fraudulent transfer, veil piercing, and conspiracy allegations against the Debtor must be determined. At this late stage, the State Court is much better positioned to promptly hear and resolve those claims than is this Court.

### III.   *If These Cases are Not Dismissed or Stayed, the Appointment of a Trustee is Essential.*

The appointment of an independent fiduciary is warranted in this case under section 1104(a)(1) of the Bankruptcy Code. Specifically, 11 U.S.C. § 1104(a) provides:

18

At any time after the commencement of the case but before confirmation of a plan, on request of a party in interest or the United States trustee, and after notice and a hearing, the court shall order the appointment of a trustee—

(1) for cause, including fraud, dishonesty, incompetence, or gross mismanagement of the affairs of the debtor by current management, either before or after the commencement of the case, or similar cause, but not including the number of holders of securities of the debtor or the amount of assets or liabilities of the debtor…

(2) if such appointment is in the interests of creditors, any equity security holders, and other interests of the estate, without regard to the number of holders of securities of the debtor or the amount of assets or liabilities of the debtor [ ].

11 U.S.C. §1104(a)(1)-(2).

There is little published authority in the Seventh Circuit addressing the appointment of a chapter 11 trustee. *See, e.g., In re Waterworks, Inc.*, 538 B.R. 445 (Bankr. N.D. Ill. 2015) (denying a creditor's motion to convert or appoint a trustee). It is clear that, like abstention, the appointment of a trustee is an extraordinary remedy and that cause must be established by clear and convincing evidence. *Id.*, *citing In re Chardon*, No. 13-B-81372 (Bankr. N.D. Ill. July 1, 2015); *In re: LHC, LLC*, 497 B.R. 281, 291 (Bankr. N.D. Ill. 2013).[8] Courts within the circuit look to authority from other jurisdictions to inform determinations of cause under section 1104(a). *See, e.g., Kwitchurbeliakin v. Laporte Savings Bank*, 2011 WL 93714 (unpub'd) N.D. Ind., Jan. 10, 2011 (citing authority from remote jurisdictions); *In re Bellevue Place Associates*, 171 B.R. 615 (Bankr. N.D. Ill. 1994) (citing 2nd and 3rd circuit cases).

A finding of "cause" under § 1104(a)(1) mandates the appointment of a trustee. *Oklahoma Refining Co. v. Blaik (In re Oklahoma Refining Co.)*, 838 F.2d 1133, 1136 (10th Cir.

---

[8] *But see Tradex Corp. v. Morse*, 339 B.R. 823, 829-32 (D. Mass. 2006), *citing Grogan v. Garner*, 498 U.S. 279, 286 (1991), and noting that recent Supreme Court precedent and the addition of section 1104(e) to the Bankruptcy Code suggest that the appropriate burden of proof should be preponderance of the evidence.

19

1988); *In re V. Savino Oil & Heating Co., Inc.,* 99 B.R. 518, 525 (Bankr. E.D.N.Y. 1989). The list of wrongs constituting "cause" is non-exclusive, and "[f]actors relevant to the appointment of a trustee under § 1104(a)(1) include: conflicts of interest, including inappropriate relations between corporate parents and the subsidiaries; misuse of assets and funds; inadequate record keeping and reporting; various instances of conduct found to establish fraud or dishonesty; and lack of credibility and creditor confidence." *In re Altman*, 230 B.R. 6, 16 (Bankr. D. Conn. 1999), *aff'd in part, vacated in part*, 254 B.R. 509 (D. Conn 2000). Though the "court need not find any of the enumerated wrongs in order to find cause for appointing a trustee," *Oklahoma Refining*, 838 F.2d at 1136, all of the indicia of cause are present here.

Through section 1104(a)(1) of the Bankruptcy Code, Congress has mandated that a chapter 11 debtor-in-possession, who acts as a fiduciary of the bankrupt estate, be an honest broker. *See Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 355 (1985) ("[T]he willingness of courts to leave debtors in possession 'is premised upon an assurance that the officers and managing employees can be depended upon to carry out the fiduciary responsibilities of a trustee.'"). When a debtor-in-possession, its management, or its professionals have exhibited an inability or unwillingness to comply with their basic fiduciary duties, there is but one remedy established by Congress to supplant management while allowing the case to remain in chapter 11: the appointment of a trustee pursuant to 11 U.S.C. § 1104(a). *See In re V. Savino Oil*, 99 B.R. at 526 ("And if the debtor-in-possession defaults in this respect, [s]ection 1104(a)(1) [of the Bankruptcy Code] commands that stewardship of the reorganization effort must be turned over to an independent trustee.").

20

In turn, section 1104(a)(2) of the Bankruptcy Code allows appointment of a trustee even when no "cause" exists.[9] *See In re Sharon Steel Corp.*, 871 F.2d 1217, 1226 (3d Cir. 1989); *In re Ionosphere Clubs, Inc.*, 113 B.R. 164, 168 (Bankr. S.D.N.Y. 1990). Under section 1104(a)(2), the court may direct the appointment of a trustee, in its discretion, to address the "interests of the creditors, any equity security holders, and other interests of the estate." 11 U.S.C. § 1104(a)(2). *See, e.g., Sharon Steel*, 871 F.2d at 1226, *Comm. Of Dalkon Shield Claimants v. A.H. Robins Co.,* 828 F. 2d 239, 242 (4th Cir. 1987).

Under section 1104(a)(2), courts look to the practical realities and necessities. *In re Adelphia Comm's Corp.*, 336 B.R. 610, 658 (Bankr. S.D.N.Y. 2006), *aff'd*, 342 B.R. 122 (S.D.N.Y. 2006); *In re Euro-American Lodging Corp.*, 365 B.R. 421, 427 (Bankr. S.D.N.Y. 2007). Accordingly, the standard for appointment of a chapter 11 trustee under section 1104(a)(2) is flexible. *Adelphia*, 336 B.R. at 658; *In re The 1031 Tax Group, LLC*, 374 B.R. 78, 90-91 (Bankr. S.D.N.Y. 2007). The factors considered by the courts in assessing motions brought under this section include (1) the trustworthiness of the debtor, (2) the debtor's past and present performance and prospects for rehabilitation, (3) the confidence--or lack thereof—of the business community and of creditors in present management, and (4) the benefits derived from the appointment of a trustee, balanced against the cost of the appointment. *Adelphia*, 336 B.R. at 658; *Euro-American*, 365 B.R. at 427; *1031 Tax Group*, 374 B.R. at 91. Again, these factors weigh in favor of a trustee appointment in this case.

If this Court finds that the estate's fiduciaries have engaged in "fraud, dishonesty, incompetence, or gross mismanagement," due to acts or omissions which occurred either prior to

---

[9] Should the Court decline to direct the appointment of a chapter 11 Trustee under section 1104(a)(1), there are grounds to support an order directing the appointment under section 1104(a)(2).

or following the Petition Date, this Court must direct the appointment of a trustee pursuant to section 1104(a)(1). *Sharon Steel*, 871 F.2d at 1226 ("[11 U.S.C. § 1104](a)(1) requires the bankruptcy court, [ ] to appoint a trustee when the movant has proved 'cause,' which the statute defines to include incompetence and gross mismanagement."); *In re 1031 Tax Group, LLC*, 374 B.R. at 86 ("When considering whether to appoint a trustee for cause, a court's focus is on the debtor's current management [and] a court may consider both the pre- and postpetition misconduct of the current management").

The State Court findings and orders submitted in support of this Motion, although not rulings by this Court, present compelling reasons for a finding of cause for any of the remedies requested in this Motion, including the appointment of a chapter 11 trustee based on gross mismanagement by the Debtor. The collection of "prepaid management fees" for up to six years in the future from Debtor-controlled entities is but one example of the Debtor's self-dealing and disregard of court orders to the detriment of creditors. *See* Beck Aff., Exs. M-N. The Debtor's conduct "raises grave questions about the Debtor's ability to fulfill its fiduciary duty as debtor-in-possession to [his] creditors." *Sharon Steel*, 871 F.2d at 1226.

The State Courts' findings and orders, entered by unbiased factfinders, establish that serious issues exist which must be considered, and, if this case remains open, acted upon by whomever is serving as estate fiduciary in these cases. The Debtor has actively sought to enrich himself and his family members at the expense of unsecured creditors. The Debtor himself is hopelessly and fatally conflicted from evaluating the validity of his own conduct. Under these circumstances, courts have found that a chapter 11 trustee is necessary. *See, e.g., Sharon Steele*, 871 F.2d at 1226. If these cases proceed, only a chapter 11 trustee will be in a position to conduct the necessary evaluation of the Debtor's prepetition conduct and to pursue the

22

appropriate remedies in the best interest of creditors, including proposing a feasible plan of reorganization if that is even possible.

Finally, neither abstention nor the appointment of a trustee will delay the process of confirming a feasible plan of reorganization in this case—which has just begun.  If such a plan can be formulated (which Bielinski doubts), it is much more likely to occur under the watchful eye of an independent fiduciary.  In sum, ample "cause" exists for dismissal, abstention, or the appointment of a chapter 11 trustee.  If none of those remedies seems desirable, then the Court always maintains the discretion, pursuant to section 105 of the Bankruptcy Code, to fashion another remedy to address the rampant fraud and deceit that have tainted the filing of these cases.

## CONCLUSION

**WHEREFORE,** Bielinski respectfully requests that this Court enter an order dismissing the cases entirely, abstaining from exercising jurisdiction pending a resolution of the State Court proceedings, or directing the appointment of a chapter 11 trustee.  In the alternative, Bielinski asks that the court grant such other relief as the Court deems just, fair, and equitable.

Dated:  February 26, 2016.

GODFREY & KAHN, S.C.

By:  */s/ Katherine Stadler*
    Katherine Stadler (State Bar No. 1030775)
    Sean O'D. Bosack (State Bar No. 1029661)
    Erin A. West (State Bar No.1075729)
    Nina Beck (State Bar No. 1079460)

    *Attorneys for Bielinski Bros. Builders, Inc.*

GODFREY & KAHN, S.C.
One East Main Street, Suite 500
Madison, WI  53703
Telephone:  (608) 257-3911
Facsimile:  (608) 257-0609
E-mail:  kstadler@gklaw.com, sbosack@gklaw.com, ewest@gklaw.com, nbeck@gklaw.com

15289996.1

23