UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF WISCONSIN

| In re:<br><br>Michael A. Gral,<br><br>      Debtor. | Case No. 16-21329<br>Chapter 11 |
|---|---|

| In re:<br><br>Capital Ventures, LLC,<br><br>      Debtor. | Case No. 16-21331<br>Chapter 11 |
|---|---|

| In re:<br><br>Gral Holdings Key Biscayne, LLC,<br><br>      Debtor. | Case No. 16-21330<br>Chapter 11 |
|---|---|

**RESPONSE BRIEF TO MOTION TO DISMISS OF
BIELINSKI BROS. BUILDERS, INC. ("BBB")**

**STATEMENT OF THE CASE**

Giving the Court a background of this case, Mr. Gral will attempt to avoid the exaggeration and hyperbole of BBB. He will also attempt to recite the facts that would also be admissible into evidence at the hearing that is to take place in this case.

BBB lists what it describes as "Facts." Rather, the vast majority of the facts are in dispute, many of the facts are just plain wrong, and the implication that the assertions are supported by Debtors' prior State Court pleadings is misleading. BBB references in its Motion (the "Motion") that "Unless otherwise noted, the source for each fact is found in the Second Amended Complaint and Answer to [sic] and Affirmative Defenses (to Plaintiff's Second Amended Complaint) attached to the Beck Affidavit as Exhibits C and D, respectively. Beck Aff. Paragraphs 4-5, Exs.

1

C-D. Footnote 3 of Motion of BBB. For ease of reference, the disputed facts will be laid out in a chart to supplement this brief, or through testimony at the hearing and the introduction of said chart into evidence.

BBB repeated alleges that Michael stole funds from BBB. This is not only unsupported in the evidence provided by BBB but is contradicted by the Wisconsin Supreme Court opinions cited in the chart above, which quite clearly explain that while Michael did make a mistake, he did not "steal" funds from BBB:

> Attorney Gral stipulated that he entered into real estate transactions with Brownell [the BBB CEO]. In the course of the transactions, Brownell improperly took funds from the BBBs without their knowledge. Brownell led Attorney Gral to believe that the BBBs were aware of the transactions and that the BBB entities had been repaid. Attorney Gral did not contact the BBBs to confirm that they were aware their funds had been used nor did he inquire whether the funds had been repaid. In fact, the BBBs were not aware of and had not approved the use of their funds, nor had they been repaid by Brownell. In the stipulation, Attorney Gral admitted that his acts were inappropriate since he did not contact the BBBs, he failed to confirm the information with them, and he also admitted that his actions had the effect of placing his own financial interests ahead of his clients' interests.
> In a sentencing memorandum filed by the government in the federal court action, the government said that, "Gral's wrongdoing generally involves 'sins of omission.'" The government also noted that Attorney Gral did not directly obtain any money from the BBBs, that Brownell was the instigator of the overall fraud against the BBBs, and that many aspects of Brownell's fraud did not involve Attorney Gral.

*In the Matter of Disciplinary Proceedings Against Michael A. Gral,* 2010 WI 14, ¶¶ 7 – 8, 323 Wis. 2d 280, 779 N.W.2d 168. See also, *In re Disciplinary Proceedings Against Gral*, 2007 WI 22, ¶ 18, 299 Wis. 2d 160, 166, 727 N.W.2d 495, 498-99.[1] The Court also cited to the referee findings that:

> Despite his criminal conduct, Gral has done everything possible since his criminal conduct became known to comply with all federal orders and judgments, and all

---

[1] The stipulation states that Attorney Gral did not improperly take funds from the BBBs, did not intend to take funds from them, and did not know that funds had been improperly taken. The stipulation states that in both transactions Brownell was the one who improperly took the funds from the BBBs, and Brownell failed to advise Attorney Gral that the funds had been improperly taken.

2

> Wisconsin Supreme Court rules. In addition, as the federal court noted, Gral went
> beyond simply complying with court orders, given that he also affirmatively
> sought to cooperate in every manner possible with federal authorities.
> Gral has repeatedly accepted full responsibility for his criminal activities.

*2010 WI 14* at ¶ 25.

The "sins of omission," constantly referred to as "stealing" by BBB, are not material to the instant case because they cannot be used as a basis in support of BBB's motions. We dispute and will refute all of BBB's baseless allegations.

Mr. Gral graduated from Hamline University School of Law in 1985 (L.L.M., Georgetown University School of Law, 1989) and was admitted to practice in Wisconsin in that year. Until 1994, Mr. Gral worked for various law firms in the Milwaukee area and in August of 1994, joined the law firm of Michael Best & Friedrich, LLC ("MBF"). During his sojourn with MBF, Mr. Gral, on behalf of MBF, performed legal services for BBB.

While doing legal work on behalf of MBF for BBB, Mr. Gral interacted significantly with Robert Brownell, the then CEO of BBB. During the early 2000s, Mr. Gral went into a number of business ventures involving Mr. Brownell. Unbeknownst to Mr. Gral, Mr. Brownell was taking monies that he controlled as CEO of BBB and self-dealing in a number of investments, including two that Mr. Gral was involved in. In 2004, Mr. Gral terminated his relationship with MBF. On December 14, 2005, Mr. Gral plead guilty to one count of a crime pursuant to Mr. Gral's Defendant's Offer of Proof.

In June of 2006, Mr. Gral entered into a settlement agreement, wherein he agreed to pay BBB its claimed damages as a result of Brownell's defalcations of $3,200,000.00.

Mr. Gral's father, Donald A. Gral, personally guaranteed part of Mr. Gral's obligations under the settlement agreement.

Over the years, the Debtor repaid BBB $1,752,000.00 in 2005; $400,000.00 in July of 2007; $400,000.00 in July of 2008; and $75,000.00 in 2010.

As will be stated below, Mr. Gral has been involved in a number of real estate transactions from the 1990s on, and the deflation of real estate values that occurred as a result of the great recession that started in the middle of 2008 and has not ended until recently, made it difficult for Mr. Gral to sell or refinance assets in order to make payments to BBB pursuant to the settlement agreement.

As a result of collection efforts, BBB was able to obtain a judgment against Mr. Gral in the amount of $1,748,787.00 in the middle of 2010. Since that time, BBB has been successful in a number of collection efforts, which have the result of prohibiting Mr. Gral from earning his living as a real estate investor and property manager. As part of those efforts, a supplemental receiver was appointed to assist BBB in its collection efforts.

In addition, SB1 Cedarburg, LLC, another major unsecured creditor of the Debtor, as a result of a judgment in the amount of $2,700,000.00 plus (pursuant to a guarantee) also inflicted itself by intervening in BBB's state court action. It has also been attempting to collect on the debt by the intervention, and by initiating proceedings in the Circuit Court of Miami-Dade County, Florida, effecting this Debtor, and the related Debtor in the case of Gral Holdings Key Biscayne, LLC, as Case No. 16-21330.

As a result of all of these collection proceedings, Mr. Gral has been forced to pay, over the last couple of months, over $9,000.00 constituting the unexempt portion of his salary. These monies can be recovered against BBB as preferences. Throughout the state court proceedings against Mr. Gral, there has not been one evidentiary hearing. The state court judges have acted

4

based upon affidavits signed by the attorneys for BBB and SB1, which unfortunately, the state court has accepted.

Now that the real estate market has improved, Mr. Gral has been involved in intensive efforts to come to a settlement with BBB and for that matter SB1.

During all this time, Mr. Gral has been attempting to negotiate with other substantial creditors in an attempt to consolidate his debts, which he was unable to.  By the weekend of February 20, 2016, Mr. Gral could see the handwriting on the wall as there was a motion for summary judgment scheduled before the trial court and some motions for sanctions against Mr. Gral and others.  Because the state trial courts have refused to hold evidentiary hearings so that admissible evidence could be utilized for a court to determine whether or not Mr. Gral has participated in fraudulent activities, the trial court has historically chosen to believe the affidavits of BBB and SB1 attorneys rather than listen to the evidence.  As an example, the trial court appointed former Judge Michael Skwierawski as a special master to monitor the state court proceedings and provide recommendations to the court on a supposed neutral basis as to BBB's claims.  Instead Judge Skwierawski has taken it upon himself to assist BBB in providing advice not only to the court, but to BBB to continue to tighten the financial noose against Mr. Gral.

Again, seeing the handwriting on the wall, Mr. Gral had no choice but to seek the protections of the bankruptcy laws in the hopes that he could be more fairly treated in this jurisdiction.

Also at the time of the filing of the Petitions, Michael A. Gral and Capital Ventures, LLC were the subject of two separate pieces of litigation in the Circuit Court of Milwaukee County, the results of which had prevented Michael A. Gral and Capital Ventures, LLC from devoting their assets to all of their creditors, which are far more substantial than the debt to BBB.  In addition,

5

Michael A. Gral and Key Biscayne were subject to two pending pieces of litigation in Dade County, Florida, (although one, involving SB1Cedarburg, LLC, also a plaintiff in the Milwaukee County litigation, appears to have not been as vigorously pursued as the litigation involving the Estate of Peter Margolis). Those pieces of litigation have caused the Debtor to incur attorney fees of almost $50,000.00 in Florida and over $100,000.00 in Wisconsin, with no end in sight. Further, Michael A. Gral was subject to additional pending litigation in the Circuit Court of Milwaukee County involving a primary residence foreclosure action. The BBB litigation in Milwaukee would have resulted in a jury trial of over three weeks where that matter could be disposed of in probably half the time in this Court. It is the position of Mr. Gral that the State Court judges are less qualified to rule upon matters of fraudulent conveyances and corporate veil piercing than a United States Bankruptcy judge.) The costs incurred by the Debtors in submitting the disputes with BBB will be more cost-effectively decided in this Court, than in State Court, and will actually result in less expense for BBB.

In the 1990s, Mr. Gral, in addition to his legal work, began acquiring real estate assets with other members of his family who had historically been in the investment real estate business. As an example, Mr. Gral began investing in various entities and a number of LLCs were formed with other members, but one of the first ones that was set up, was organized in July of 1994 in the name of Capital Ventures, LLC, which is now a co-debtor owning some investment property in Glendale, Wisconsin. Until 2004, more than fifteen limited liability entities were set up before Mr. Gral learned that there was a problem with Mr. Brownell.

In June of 2006, Michael Gral and his wife Julia, settled the Michael A. Gral and Julia G. Gral Living Trust, a revocable trust, which was set up for estate planning purposes, and not for the

6

purpose of avoiding Mr. Gral's debts to his various creditors. Eventually, this Trust became the owner of various membership interests that Mr. Gral had invested in.

By way of explanation, this Trust would probably have filed a contemporaneous petition for bankruptcy, but was not able to, because it is not a business trust, but an estate planning trust, which are prohibited from filing bankruptcy petitions. See *In re Jin Suk Kim Trust*, 464 B.R. 697, 702 (Bankr. D. Md. 2011).

This set of facts now brings us up to the present date and the reasons for the three filings. With respect to Gral Holdings Key Biscayne, LLC, there is a pending case in the Circuit Court of Miami- Dade County, where another adverse creditor of Mr. Gral, the Estate of Peter Margolis, is scheduled for a trial to begin this month on Margolis' attempt to grab control of the general partner interests of the limited partnership owner, and also the real estate owned by the Florida LLC, which is a condominium interest in a condominium in Key Biscayne, Florida.

Again, rather than risk an adverse decision by a court in Florida, Mr. Gral thought that it would be better if that case was under the jurisdiction of this court rather than the foreign jurisdiction of the State of Florida. Capital Ventures, LLC, also filed a contemporaneous petition. One reason was that this was a wholly owned entity of Mr. Gral and therefore permission from other owners would not have to be obtained (most of the other owners in other entities are family members, but some were not). Furthermore, the Estate of Margolis has a purported interest as a junior lien or on the investment property owned by Capital Ventures, LLC. Debtors' counsel believes that this junior lien is avoidable, and therefore providing all of the creditors an additional almost $400,000.00 in equity in that property. The property owned by Capital Ventures, LLC, is one of the properties that Mr. Gral intends to use in order to provide a vehicle to pay and settle his

7

creditors as part of the pre-petition settlement endeavors and is part of the eventual plan of reorganization to be submitted by the Debtors.

## ARGUMENT NO. 1

The Key Biscayne entity is not part of the litigation in state court in Milwaukee County. Gral Holdings Key Biscayne, LLC, is not a party defendant in the Case 2013-CV-6699 now before Judge Yamahiro in the Circuit Court of Milwaukee County, consequently, BBB cannot be considered a creditor of this Debtor nor is this Debtor subject to any alleged fraudulent conveyance and other fraud claims proposed by BBB, or SB1, in state court.

Even though BBB has filed a motion to dismiss in the Key Biscayne bankruptcy proceedings, that motion must fail.

## ARGUMENT NO. 2

The Capital Ventures bankruptcy proceedings was clearly filed for the above reasons in addition to avoiding the state court action as stated previously. Capital Ventures has a very important reason for seeking the protection of the bankruptcy courts including the voiding of the alleged lien of the Estate of Margolis. There will be substantial increased equity in this investment if the Debtor is able to vitiate this lien, which Debtor firmly believes is feasible.

## ARGUMENT NO. 3

### The Motion to Dismiss the Gral Bankruptcy

The alleged avoidance claims asserted by BBB in the state court proceedings are actions that Mr. Gral, as a fiduciary Debtor-in-Possession, would better be able to bring on behalf of all the creditors, not just BBB.

**BBB's Claims in State Court are Fiduciary Claims of the Debtors-in-Possession**

The Debtors-in-Possession in these cases and particularly the Debtor, Michael A. Gral, is a fiduciary for the estate and its creditors. The Debtor-in-Possession shall have all the powers of a Chapter 11 Trustee, except the duties under 11 U.S.C. § 1106(a)(2)(3) and (4). The Debtor-in-Possession is required to maintain a duty of loyalty to the estate. See *Mosser v. Darrow*, 341 U.S. 267 (1951).

When you combine the provisions of 11 U.S.C. § 1107 with the provisions of 11 U.S.C. § 541(a)(3), it is a compelling argument that the Debtor-in-Possession is the proper party to assert the various claims that BBB is making in state court, for the benefit of all the creditors.

11 U.S.C. § 541(a)(3) says that property of the estate includes sums recovered by the Debtor-in-Possession as a result of avoidance actions. 11 U.S.C. § 550(a) is quoted as follows: "…to the extent that a transfer is avoided under section [544 through 549]…the trustee may recover, for the <u>benefit of the estate</u>, the property transferred, or, if the court so orders, the value of such property…"(emphasis supplied). Cases including those in the 7th Circuit have stated that in order to assert the claims against the Debtors by BBB, the Debtor must prove that the benefit of those claims is to the creditors, rather than the Debtor alone. See *P.A. Bergner & Co.,* 140 F.3d 1111 (7th Cir. 1998).

The Debtor intends to show at the hearing how the Debtors will act pursuant to their fiduciary responsibilities to create equity for the benefit of all the creditors, not just BBB, or for that matter SB1. The claims that Debtors intend to assert pursuant to their fiduciary responsibilities are the same claims that BBB claims it has against other parties including the Debtor Gral's relatives, and other defendants in the state court proceedings, which include alleged fraudulent

9

transfers, alleged conspiracies involving the Debtors and other limited liability entities and an attempt at veil piercing, if all those claims are cognizable.

It is for the very same essential reason that the court should not abstain from hearing the state court matters. BBB is using the state court proceedings to attempt to obtain an advantage over other creditors in the same class, to wit: unsecured creditors. Dismissing this case, or abstaining from hearing the matters with respect to certain avoidance actions that BBB wants to be heard in state court, must be held in this court, in order to preserve those claims for all of the creditors.

The Debtors-in-Possession are in a position to handle these claims, and in fact, must handle these claims in order to meet their fiduciary obligations as cited above.

## **OTHER FACTORS MILITATING AGAINST DISMISSING THIS CASE OR GRANTING BBB'S REQUEST FOR ABSTENTION**

(a) There are mechanisms in the Bankruptcy Court to address any allegations of defalcation by the Debtors (even though there haven't been). BBB expresses worry that the Debtors will be able to escape the overlook of individuals appointed by the state court if the proceedings of these bankruptcies are allowed to continue.

BBB knows full well, but has ignored the reporting requirements and the scrutiny of the United States Trustee with respect to Debtors-in-Possession. The court well knows that monthly reports are required, in addition to quarterly reports with respect to entities that are controlled by the Debtors own a substantial interest or hold a controlling interest.

In addition, there most certainly shall be an unsecured creditors committee, who shall have their own attorney and of course they are charged with a duty to protect all creditors of their class by their own investigation of the Debtors. If there is wrongdoing, there is the mechanism of 2004

10

Case 16-21329-gmh    Doc 56    Filed 03/23/16    Page 10 of 15

examinations and requests for documentation, which will protect all of the creditors, not just BBB as is being done in state court.

(b) The Living Trust. BBB makes much to do about nothing with respect to the Michael and Julia Gral Living Trust (the "Trust"). This is a revocable trust, an estate planning vehicle, and not a business trust. BBB seemingly has failed to inform the court that this is a revocable trust. The Trust cannot even file its own petition in bankruptcy. This Trust is going to be ignored because it is revocable and can be disbanded at any time.

(c) There is no loss. BBB complains that due to primarily Michael Gral's actions, that the estates of the Debtors are continuing to lose money, the values are diminishing and that there has been gross mismanagement.

BBB says that there is "absence of financial data and certain sources of income." See page 15 of Docket No. 17. We believe that the court will find that these are some the most organized Debtors it will have seen as far as financial reporting.

BBB says that the dismissal of this case would be in the best interest of the creditors. There is only one creditor that would have any interest and that is BBB. Even the other creditor, SB1, has not asked that this case be dismissed.

We predict that BBB will not be able to meet its burden that the Debtors are guilty of mismanagement. They will only be able to prove that the dismissal of these cases will be in their own interest, and not in the universal interest of all parties.

## ARGUMENT NO. 4

BBB's arguments appear to hinge primarily on its allegation that the Debtors filed in "bad faith," or put more appropriately, that the Debtors failed to satisfy the good-faith filing requirements implied by 11 USC 1112(b). However, the burden of proof rests on the creditor to

11

establish that the Debtor does not need the protection of the bankruptcy courts, and that the bankruptcy filing substantially impacts the creditor's non-bankruptcy rights. In re N.R. Guaranteed Retirement, Inc., 112 B.R. 263, 273 (Bankr. N.D. Ill. 1990). BBB has failed to meet its burden of proof to achieve dismissal or conversion of this case.

BBB lists a number of factors for the court to consider in situations of allegations of "bad faith" filings. However, BBB has failed thus far, and will fail at an evidentiary hearing, to demonstrate by a preponderance of the evidence that any of the case-law-enumerated factors are present here. BBB has attempted to paint a picture that the filing hindered its collection efforts, and no one else's. BBB has also attempted to deceive the court in hiding the fact that it is only one among a large group of unsecured creditors with a significant interest in the Debtors.

The Debtors are not only subject to the claims of BBB, but also of creditors like SB1, the Estate of Peter Margolis, and others more still. In order to provide a maximum payout to their creditors and to attempt to make BBB, SB1, and others as close to whole as possible, the Debtors need the assistance of the bankruptcy courts in reorganizing their debts so as to make sure all creditors interests are managed, not just those of BBB.

It is BBB's greed that brings it to this court requesting dismissal or in the alternative abstention. BBB wishes this court abstain from hearing these proceedings so that these matters can be resolved in State court in proceedings in which BBB is the principal party, and where SB1 is subordinate to BBB's claims. If it were up to BBB, this case would remain that way and it would not share in any recovery it is able to obtain through State court remedies. In addition to the aforementioned reasons, the Debtors filed these cases in an effort to address the claims of multiple creditors, including but not limited to BBB, SB1, and the Estate of Peter Margolis. If the court were to abstain from these cases and not confirm a plan, then it is unlikely that other

creditors like those mentioned would recover anything of substance. However, if the Debtors are able to receive the assistance of the bankruptcy courts, then a plan could be crafted and confirmed that would ensure that all creditors are paid, not just BBB. This court cannot allow the greed of one unsecured creditor to supersede the interests of all other creditors, both secured and unsecured.

It is respectfully submitted that the court deny the motions of BBB.

## APPOINTMENT OF A CHAPTER 11 TRUSTEE

BBB admits that "like abstention, the appointment of a Trustee is an extraordinary remedy and that cause must be established by clear and convincing evidence." See page 19 of Docket No. 17.

Basically, BBB makes the same argument for the appointment of a trustee as it does for dismissal or abstention: cause to appoint a trustee includes "incompetence and gross mismanagement." See page 22 of Docket No. 17.

Another example is that Mr. Gral has collected "prepaid management fees" and this is an example of incompetence and self-dealing. The testimony at the hearing will prove otherwise.

## ARGUMENT NO. 5

Debtors comment on the following cases cited by BBB: With regard to *Clarkson*, the Debtors will show that they will be able to reorganize successfully, and therefore this case is inappropriate because the Debtors have filed financial information and through the monthly operating reports will show cash flow. In re Clarkson, 767 F.2d 417 (8th Cir. 1985).

Turning to *Sharon Steel*, at the hearing there will be no proof of the transfer of assets on the eve of filing the petition, nor there any proof that the Debtors have mismanaged assets. In re Sharon Steel Corp., 86 B.R. 455 (Bankr. W.D. Pa. 1988). Additionally, and referring to *Northshore*

13

*Mainland*, the interest of both the Debtors and creditors must be served by granting abstention motions, and BBB has failed to demonstrate that any other creditors would be served by abstention in this case. In re Northshore Mainland Servs., Inc., 537 B.R. 192 (Bankr. D. Del. 2015).

Next, if there is a lack of valid reorganizational purpose, only then should dismissal be considered, as made clear in *SGL Carbon*. In re SGL Carbon Cop., 200 F.2d 154 (3rd Cir. 1999). Additionally, BBB relies heavily on *In re South Beach Securities* in its argument that this was a "bad-faith" filing, however in that case the only creditor was an insider, meaning that there was no legitimate reorganizational purpose. In re South Beach Securities, Inc., 606 F.3d 366 (7th Cir. 2010). Finally, *In re Monitor Single Lift I, Ltd.* makes it clear that abstention, in a properly filed case, is an extraordinary remedy, and dismissal under the abstention provision of the Code is only appropriate when both the Debtors and creditors will be better served by dismissal. In re Monitor Singhle Lift I, Ltd., 49 B.R. 455 (Bankr. S.D. N.Y. 2008).

## CONCLUSION

The humongous amount of materials submitted by BBB are just additional examples of their modus operandi in utilizing innuendo, omitting facts, and misleading allegations that have somehow swayed state court personnel that there has been a conspiracy to subvert the collection efforts of BBB. The Debtors intend to propose fair plans, which will result in all creditors receiving fair distributions. If BBB is permitted to trump the other creditors by attempting to obtain the full amount of its claim this will be a travesty because there will be little if anything left for all of the other creditors.

Please consider this also as an objection and brief in support of our objection to creditor SB1's Motion for the Appointment of a Chapter 11 Trustee. Also, the parties are hereby notified of the possibility of supplementation of this brief to follow.

14

Respectfully submitted this 23rd day of March, 2016.

>LAW OFFICES OF JONATHAN V. GOODMAN
>Attorneys for Debtors
>
>By:    /s/ Jonathan V. Goodman
>       Jonathan V. Goodman

Law Offices of Jonathan V. Goodman
788 North Jefferson Street - Suite 707
Milwaukee, WI 53202-3739
PH: (414) 276-6760 - FX: (414) 287-1199
e-mail: jgoodman@ameritech.net