UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

In re:

| | |
|---|---|
| Michael A. Gral, | Case No. 16-21329-GMH |
| Debtor in Possession.[1] | Chapter 11 |

| | |
|---|---|
| Michael A. Gral and | |
| Gral Holdings Key Biscayne, LLC, | Adv. Proc. No. 16-02193-GMH |
| Plaintiffs, | |
| v. | |
| Estate of Peter Margolis, | |
| Defendant. | |

**DECISION AND ORDER**

The Estate of Peter Margolis ("Margolis") holds a judgment against Michael A. Gral and his wife, Julia Gral, entered by the Milwaukee County Circuit Court. Case No. 16-21329, Claim No. 3-2. Margolis domesticated that judgment in Miami-Dade County,

---

[1] This court is jointly administering *In re Michael Gral*, Case No. 16-21329 and *In re Gral Holdings Key Biscayne, LLC*, Case No. 16-21330; and, separately, the court is jointly administering *In re Michael Gral*, Case No. 16-21329 and *In re Capital Ventures, LLC*, Case No. 16-21331. This order relates to *In re Michael Gral*, Case No. 16-21329, *In re Gral Holdings Key Biscayne, LLC*, Case No. 16-21330, and *Michael A. Gral v. Estate of Margolis*, Adv. Proc. No. 16-2193.

Florida. *Id.*; see also Case No. 16-21329, CM-ECF Doc. No. 119 at 6. Margolis then commenced a state-court collection action in Miami-Dade County against Michael and Julia Gral; the Michael A. Gral and Julia G. Gral Living Trust dated June 13, 2006 (the "Trust"); Gral Holdings, Ltd.; and Gral Holdings Key Biscayne, LLC ("Key Biscayne"). CM-ECF Doc. No. 15 at 1–2; Case No. 16-21330, CM-ECF Doc. No. 35 at 1–2.

After Margolis sued in Florida, Michael Gral and two related entities filed chapter 11 petitions. Margolis seeks to continue its Florida collection suit against Julia Gral. Margolis contends that Julia Gral, who is not a debtor, owns property in which Michael Gral has no interest, including a fifty-percent share of Margolis Gral LLC ("Margolis Gral"). (Margolis, unsurprisingly, owns the other fifty-percent of Margolis Gral.)

Plaintiffs Michael Gral and Key Biscayne commenced this adversary proceeding to enjoin Margolis from continuing its collection lawsuit against Julia, the Trust, and Gral Holdings, Ltd., another non-debtor. CM-ECF Doc. No. 1. The plaintiffs contend, among other things, that Margolis's effort to collect from Julia Gral necessarily entails an act to collect from marital property, which is property of Michael Gral's bankruptcy estate. *Id.* Michael Gral separately moved for sanctions against Margolis, contending that Margolis's pursuit of Julia in the Florida state-court litigation violates §362(a)'s stay of acts to collect from property of the bankruptcy estate. 11 U.S.C. §362(a)(3). Case No. 16-21329, CM-ECF Doc. No. 265.

This decision resolves a central question to both the adversary plaintiffs' request that I enjoin Margolis's pursuit of collection in Florida and Michael Gral's contention that the automatic stay enjoins Margolis's pursuit of Julia, namely, whether Julia Gral owns a fifty-percent interest in Margolis Gral as individual property or as marital property. (Margolis also asserts that Julia individually owns an interest in Glendale

Medical Investments, LLC. The parties largely ignore this contention. I follow suit because its resolution is unnecessary to decide the matters immediately at hand.[2])

The parties have presented the matter for decision on the undisputed facts described below.

I

Michael and Julia Gral are the settlors and co-trustees of the Trust. The Trust has held their marital assets since its creation in 2006. One asset held by the Trust before September 8, 2011, was the Grals' fifty-percent interest in Margolis Gral. CM-ECF Doc. No. 32-1 at ¶3.

In the summer of 2011, Glendale Medical Center, LLC, an entity indirectly owned by Margolis Gral, needed new financing. CM-ECF Doc. No. 30 at 1–2, Ex. A. American Equity Investment Life Insurance Company was willing to lend to Glendale Medical Center on the condition that Michael Gral, who is a convicted felon, divest his ownership interest in Glendale Medical Center and Margolis Gral. *Id.*; see also CM-ECF Doc. No. 29 at 3, Ex. B.

On September 8, 2011, the Trust transferred its membership interest to Julia Gral using the Assignment of Membership Interest pictured below:

---

[2] Margolis has not provided any support for its contention that Julia Gral owns an individual interest in Glendale Medical Investments other than (1) a reference to untranscribed testimony given by Michael Gral at a June 24, 2016, hearing, and (2) to note that certain "Explanatory Statements" to a refinancing transaction provided that Michael Gral would not be a beneficial owner of Glendale Medical Investments. See CM-ECF Doc. No. 29 at 3–6, Ex. B.

## ASSIGNMENT OF MEMBERSHIP INTEREST

This Assignment of Member's Interests (the "Assignment"), dated as of the ___8___ day of September, 2011, is made by and between Michael A. Gral and Julia G. Gral, as Trustees of the Michael A. Gral and Julia G. Gral Living Trust Dated June 13, 2006 ("Assignor") and Julia G. Gral (" Assignee").

### RECITALS

WHEREAS, Assignor desires to assign a fifty (50%) membership interest ("Subject Interest") in Margolis Gral, LLC, a Flordia limited liablity company (the "Company") to Assignee; and

WHEREAS, Assignee desires to accept assignment of the Subject interest;

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties hereby agree as follows:

1. **Assignment of Interest**. Assignor does hereby assign and transfer to Assignee, absolutley and unconditionally, the Subject Interest in the Company.

2. **Effective Date of Assignment**. The Assignment shall be effective as of the date first written above.

3. **Governing Law**. This Assigment shall be governed by and construed in accordance with the internal laws of the state of organization of the Company, and such state shall have jurisdiction over all matters arising under this Assignment.

IN WITNESS WHEREOF, the parties hereto have executed this Assignment of Member's Interests effective as of the date first set forth above.

ASSIGNOR:

Michael A. Gral and Julia G. Gral, As Trustees of the Michael A. Gral and Julia G. Gral Living Trust Dated June 13, 2006

_____
Michael A. Gral, Trustee

_____
Julia G. Gral, Trustee

ASSIGNEE:

_____
Julia G. Gral

CM-ECF Doc. No. 30 at 7.

Margolis contends that this assignment ("Assignment") divested Michael Gral of any marital property interest in Margolis Gral. Michael Gral disagrees, arguing that the property remains marital property owned by Julia, rather than by the Trust.

II

Wisconsin marital property rights are creatures of Wisconsin law. That law also governs the Trust. The law of Florida, the state under which Margolis Gral is organized, governs the Assignment. The parties make nothing of these issues.

The parties instead look to Wisconsin law in addressing the marital property issues and otherwise refer to precedents from a variety of jurisdictions. This decision follows that course. The parties have forfeited all choice-of-law arguments.

A

The Grals are domiciled in Wisconsin, and they married after Wisconsin's Marital Property Act (the "Act") became effective. See Wis. Stat. ch. 766. No one disputes the Act's general applicability.

The Act provides, "[a]ll property of spouses is marital property except that which is classified otherwise by [the Act] and that which is described in sub. (8)." Wis. Stat. §766.31(1). Under the Act, "[e]ach spouse has a present undivided one-half interest in each item of marital property". Wis. Stat. §766.31(3). "The transfer of property to a trust does not by itself change the classification of the property." Wis. Stat. §766.31(5).

Michael Gral reports that he transferred his membership interest in Margolis Gral to the Trust "as of June 13, 2006." CM-ECF Doc. 32-1 at ¶3. Thus, after June 2006 the Trust held the Margolis Gral membership interest as marital property. All this is uncontested.

B

1

The Assignment "assign[s] and transfer[s]" the Trust's interest in Margolis Gral to Julia "absolut[e]l[]y and unconditionally." CM-ECF Doc. No. 30 at 7. The Trust affords its trustees an absolute right to transfer property; it provides:

> *Each Trustee serving hereunder shall have full power and discretion to do all things the Trustee deems necessary or advisable for the administration of the trusts* created hereunder. Subject only to any limitations herein expressly set forth, and without intending to limit said powers or discretions by reason of this enumeration, the Trustee shall have the following powers and discretions in addition to those granted by law: . . .
>
> . . . .
>
> (C) <u>Sell, etc</u>. To sell at public or private sale, *assign*, *transfer*, exchange, dispose of, lease for any term whatsoever, insure, grant options and take *any other action* with respect to *any and all* real or personal property at any time comprising an asset of a trust hereunder upon such terms and conditions, in such manner and for such consideration as the Trustee shall determine to be in the best interests of the beneficiaries hereunder; . . .
>
> . . . .
>
> (L) <u>Closely-Held Business</u>. To *take any action* with respect to the *trust's interests in any* closely-held corporation, partnership, *limited liability company* or sole proprietorship, that the Trustee determines to be in the best interests of the trust and its beneficiaries. Specifically, *in addition to the other powers set forth in this Article*, the Trustee is *authorized to enter into any arrangement with other* stockholders, partners or *members* that the Trustee deems to be advisable; . . . An individual Trustee or an employee of a corporate Trustee *may*: . . . *deal with himself in his individual capacity*; make any arrangements that he may deem appropriate for the furtherance of the interests of the trust, without regard to any conflict of interest . . . .

Case No. 16-21329, CM-ECF No. Doc. 338 at 32–33, 36 (underline in original, other emphasis added). These powers are sweeping; they leave no doubt that the Grals as trustees had the authority to assign and transfer the Trust's interest in Margolis Gral.

Michael Gral observes that the Trust provides that if the Grals withdraw marital property from the Trust, the withdrawn property remains marital property:

> (D) <u>Withdrawals</u>.
>
> (1) <u>Marital Property</u>. While both Settlors [Michael and Julia] are alive, Settlors, or either of them, may withdraw all or any part of the marital property in the trust *upon giving notice in writing to the Trustee* and, if one Settlor is making the withdrawal, to the other Settlor; provided, however, that if one Settlor had sole rights of management and control of marital property prior to its contribution to the trust, such marital property may only be withdrawn by that Settlor. Any such withdrawals *shall be delivered to the withdrawing Settlor or Settlors*, as the case may be, *as marital property*.

Case No. 16-21329, CM-ECF Doc. 338 at 3.

The Assignment does not purport to be a withdrawal of property from the Trust. And, except for the Assignment, which, again, hardly reads as a "withdrawal," Gral identifies nothing that would satisfy the Trust's requirement of notice for a withdrawal.

Rather than a withdrawal of Trust property by settlors, the Assignment shows the Grals, acting as trustees, assigning and transferring the Trust's membership interest to Julia individually. The Assignment recites that "for good and valuable consideration"—a recitation inconsistent with a withdrawal—the Trust "assign[s] and transfer[s]" the membership interest "absolut[e]l[]y and unconditionally" to Julia. CM-ECF Doc. No. 30 at 7.

The Assignment is what it says: an unconditional transfer of the membership interest from the Trust (which owned the Grals' collective rights in the membership interest) to Julia. Unless the Act limits the Assignment's effect, the Assignment made Julia the sole owner of the fifty-percent membership interest in Margolis Gral.

C

As mentioned above, the Act provides that "[a]ll property of spouses is marital property except that which is classified otherwise" and property that the spouses owned before marriage or before they were subject to the Act. Wis. Stat. §766.31(1) & (8). The Grals have been married and subject to the Act since they first acquired the Margolis Gral membership interest. As a result, Julia, as the Trust's transferee of that membership interest, owns that interest as marital property unless the Act reclassifies the membership interest as her individual property.

The Act, as applicable here, allows spouses to reclassify property from marital to individual by gift or, if the property is a security, by an instrument signed by both spouses that conveys the security:

> Spouses may reclassify their property by gift, conveyance, as defined in s. 706.01(4) [governing real property conveyances], signed by both spouses, marital property agreement, written consent under s. 766.61 (3)(e) or unilateral statement under s. 766.59 and, ***if the property is a security, as defined in s. 705.21 (11), by an instrument, signed by both spouses, which conveys an interest in the security***.

Wis. Stat. §766.31(10) (emphasis added). The Assignment thus reclassified the membership interest if (1) the membership interest is a "security" for purposes of Wis. Stat. §766.31(10) that was (2) conveyed by (3) an instrument signed by both spouses.

1

A "security" for purposes of this reclassification provision is a "share, participation or other interest in property, in a business or in an obligation of an enterprise or other issuer". Wis. Stat. §705.21(11). The Margolis Gral membership interest seems easily to fit this definition. It embodies a "participation or other interest . . . in a business".

Under then-applicable Florida law, a "member" of a limited liability company meant "any person who has been admitted to a limited liability company as a member

in accordance with [Florida Statute Chapter 608, governing limited liability companies] . . . and has an economic interest in a limited liability company". Fla. Stat. Ann. §608.402(21) (West 2011) (repealed 2015). "Membership interest" meant "a member's share of the profits and the losses of the limited liability company, the right to receive distributions of the limited liability company's assets, voting rights, management rights, or any other rights under this chapter or the articles of organization or operating agreement." Fla. Stat. Ann. §608.402(23) (West 2011) (repealed 2015). In other words, the membership interest the Assignment transferred was an ownership interest in a business, i.e., in Margolis Gral. Thus, the Assignment transferred a "security" for purposes of the Act's reclassification provision, Wis. Stat. §766.31(10).

Michael Gral does not contest that the Margolis Gral membership interest at issue is a "security" for purposes of Wis. Stat. §705.21(11), which §766.31(10) incorporates. He instead makes the irrelevant argument that the membership interest does not meet a definition of "security" in BLACK'S LAW DICTIONARY or in Wis. Stat. §408.103. CM-ECF Doc. 36 at 2. He has forfeited any argument that the membership interest is not a "security" for purposes of §766.31(10).

2

Spouses reclassifying ownership of a security by conveying it to one spouse must convey the property using an "instrument". Wis. Stat. §766.31(10). An "instrument" is "[a] written legal document that defines rights, duties, entitlements, or liabilities, such as a contract". BLACK'S LAW DICTIONARY 869 (9th ed. 2009). The Assignment is uncontestably an instrument.

The Assignment conveys—"assign[s] and transfer[s]" (CM-ECF Doc. No. 30 at 7)—"an interest in the security" (§766.31(10)). "The term 'convey' applies to any transfer of title . . . whether legal or equitable." *Mut. Fed. S & L Ass'n v. Wis. Wire Works*, 205 N.W.2d 762, 766 (Wis. 1973) (citing WEBSTER'S THIRD INT'L DICTIONARY (1965) and

reasoning that "convey" when used in a contract means "[t]o transfer or deliver (as property) to another"). The Assignment conveyed the membership interest to Julia.

3

If the Assignment was "signed by both spouses", it meets the final reclassification requirement of Wis. Stat. §766.31(10).

There is no question about Julia having signed. She signed both as trustee on behalf of the transferor Trust and on her own behalf as the transferee.

As a result, the Assignment is effective to reclassify ownership of the membership interest as long as Michael Gral's signature above a line stating, "Michael A. Gral, Trustee," amounts to his signature for purposes of §766.31(10). He contests this. CM-ECF Doc. 36 at 1–2.

No Wisconsin authority answers this question directly. This court must therefore predict how the Wisconsin Supreme Court would construe that section under these circumstances. *Lexington Ins. Co. v. Rugg & Knopp, Inc.*, 165 F.3d 1087, 1090 (7th Cir. 1999).

Ordinarily, a person's signature as a disclosed agent does not bind the agent individually. See RESTATEMENT (THIRD) OF AGENCY §6.01 (AM. LAW INST. 2006). But the Wisconsin Supreme Court in the venerable *Kellogg v. Costello* decision held that the signature of factors (agents) who had authority to transfer property in their own names satisfied the requirement of a statute providing that a contract for the sale of personal property was not valid, unless, among other things, it was "in writing subscribed by the parties". 67 N.W. 24, 26 (Wis. 1896). The factor in *Kellogg* "had an interest in the property" and, the court ruled, "effectually represent[ed] both himself and his principal" in signing the written contract. *Id.* Faced with these circumstances the court looked to the law's purpose and found it "difficult to see why the contract in question does not satisfy the law":

> The purpose of the law is manifestly to place on record the fact that one who has the possession and apparent ownership of property is not in fact the owner, so that parties dealing with such person may have the means of ascertaining the fact that he is not the owner, and thus may not be misled into extending credit on the strength of such apparent ownership. This purpose is as fully subserved, under the circumstances of this case, by the contract in question, as though it had been signed by Costello [the principal] himself. We hold that this contract has been, in legal effect, subscribed by "the parties" to the sale.

*Id.*

The circumstances here, even more so than *Kellogg*, support a conclusion that Michael Gral's John Hancock on the Assignment meets §766.31(10)'s signature requirement. Michael Gral is both the spouse whose signature is required and the person who put pen to paper.

Moreover, Gral had more authority over the property than the factor in *Kellogg*. He is both settlor and trustee of the Trust that holds substantially all of the Grals' property. The Trust affords the settlors, Michael and Julia, the authority to revoke the Trust. Case No. 16-21329, CM-ECF Doc. No. 338 at 3–4. The Trust also authorizes either of them, when both are living, to "withdraw all or any part of the marital property" from the Trust. Case No. 16-21329, CM-ECF Doc. No. 338 at 3. As a result, the Trust duties are owed only to Michael and Julia. See Wis. Stat. §701.0603.

As discussed earlier, the Trust gives trustee Michael Gral broad authority to transfer trust assets, allowing him unilaterally to

> sell . . . assign, transfer, exchange, dispose of, lease . . ., insure, grant options and take any other action with respect to any and all real or personal property at any time comprising an asset of a trust hereunder upon such terms and conditions, and in such manner and for such consideration as the Trustee shall determine to be in the best interests of the beneficiaries . . . .

Case No. 16-21329, CM-ECF Doc. No. 338 at 33. Most important, the Trust specifically authorizes Michael Gral as trustee to pursue any action in connection with the Trust's

interest in any limited liability company, including empowering him to deal with himself in his individual capacity; it authorizes him—

> **To take any action with respect to the trust's interests in any** closely-held corporation, partnership, **limited liability company** or sole proprietorship, that the Trustee determines to be in the best interests of the trust and its beneficiaries. Specifically, in addition to the other powers set forth in this Article, the Trustee is authorized to . . . **deal with himself in his individual capacity**; make any arrangements that he may deem appropriate for the furtherance of the interests of the trust, without regard to any conflict of interest, employee's salary, partnership income or other benefit he may be receiving in his own right as a stockholder, partner, member or employee. . . .

Case No. 16-21329, CM-ECF Doc. No. 338 at 36 (emphasis added). As noted earlier, the Grals signed the Assignment to comply with a potential lender's requirement that Michael Gral divest his ownership interest in Margolis Gral. Reclassification was in the Trust's best interests, and the Trust authorized Michael to deal both as trustee and in his individual capacity.

Michael Gral was no mere agent when signing the Assignment. The acts the Grals take as trustees regarding property held by the Trust are hardly distinguishable from the acts they take in their individual capacities. Michael Gral enjoys the broadest possible authority over that property and may engage in self-dealing. There is obviously no doubt that he was aware of the Assignment and its stated effect—to transfer the Trust's membership interest in Margolis Gral to Julia Gral individually. Tellingly, he testified on June 26, 2013, that the Margolis Gral membership interest is "owned by Julia individually." CM-ECF Doc. No. 29-3 at 3–4.

Under the circumstances of this case, Michael Gral's signature as "Trustee" on the Assignment must be understood also to be his signature "as spouse" for purposes of reclassification under Wis. Stat. §766.31(10). See also *Kaufman v. Fed. Nat'l Bank*, 191 N.E. 422, 424 (Mass. 1934) ("The signature of Celia Green as trustee was as effective to

convey her individual property as though she had signed simply her name. At law, the official and individual capacities of a trustee are not separated. A trustee simply owns the property, subject to such equitable rights of the cestui as may exist.").

D

Two final issues deserve brief mention.

1

Section 766.31(7)(d), Wis. Stat., provides that "[p]roperty acquired by a spouse during marriage . . . is individual property if acquired by any of the following means: . . . (d) By a decree, marital property agreement or reclassification under sub. (10) designating it as the individual property of the spouse."

Gral does not invoke this section's "designating" term in arguing that the Assignment does not reclassify the property. He instead argues that the Assignment does not show an intent to reclassify. He has forfeited any argument that the Assignment does not reclassify the membership interest because it did not conform to an additional requirement found in §766.31(7)(d). See *Tyler v. Runyon*, 70 F.3d 458, 464 (7th Cir. 1995) ("[A] litigant who fails to press a point by supporting it with pertinent authority, or by showing why it is sound despite a lack of supporting authority, forfeits the point.") (internal quotations omitted).

Section 766.31(7)(d), moreover, does not limit the Assignment's effect. Although the Assignment does not use the words "individual property," it does designate the membership interest to be Julia's individual property for §766.31(7)(d) purposes.

"[D]esignating" is a common term with several meanings, so one looks to statutory context as a guide. See *Ho-Chunk Nation v. Wis. Dept. of Rev.*, 766 N.W.2d 738, 744 (Wis. 2009). Section 766.31(7)(d) uses "designating" to indicate that property acquired during marriage can become individual property by operation of a decree, marital property agreement or reclassification that makes that property individually owned in contrast to owned as marital property. That subsection expressly refers to

reclassification under subsection (10). In this context, then, one looks to subsection (10) to determine whether spouses have used one of its methods—gift, conveyance, marital property agreement, written consent, or unilateral statement—to designate the property as individual property. See Wis. Stat. §766.31(7)(d) & (10).

Subsection (7)(d)'s reference to "designating", therefore, does not impose an additional requirement that a gift, conveyance, or other means of reclassification must use the words, "individual property" or be in any other magic form. When the legislature desired the inclusion of specific terms to govern the classification of individual property, it expressly provided for the inclusion of the terms in the statute. See Wis. Stat. §§766.587(7), 766.588(9), & 766.589(10). By not requiring a reclassification conveyance to use specific terms, the legislature allowed spouses to reclassify property from marital to individual by transferring the property to one of the spouses using an instrument that satisfies §766.31(10)'s requirements. For the reasons explained above, the Assignment satisfies those requirements and so transfers the Margolis Gral membership interest to Julia Gral individually.

2

Mixing marital property and individual property "reclassifies the [individual] property to marital property unless the component of the mixed property which is not marital property can be traced." Wis. Stat. §766.63(1).

Michael Gral argues that the Trust made all of the capital contributions for Margolis Gral after the execution of the Assignment from marital assets. CM-ECF Doc. Nos. 30 at 4; 32 at 3; 32-1 at 2 and 33 at 1. The accompanying schedule shows contributions made by Julia G. Gral. See CM-ECF Doc. No. 33 at 1.

In all events, Michael Gral has not developed an argument that Wis. Stat. §766.63(1) applies. He has thus forfeited any argument based on the Act's mixed property provision. See *Tyler*, 70 F.3d at 464.

III

Julia Gral thus owns the fifty-percent membership interest in Margolis Gral as individual, not marital, property. That membership interest, therefore, is not property of Michael Gral's bankruptcy estate.

For these reasons, Margolis's acts to collect non-debtor Julia Gral's debt from her interest in Margolis Gral does not offend 11 U.S.C. §362(a).

Accordingly,

1. The court denies Michael Gral's "motion for order enforcing the automatic stay against continuation of litigation in the Circuit Court of Miami-Dade County by the Estate of Peter Margolis and for imposition of sanctions for violation of the automatic stay". Case No. 16-21329, CM-ECF Doc. No. 265 at 1 (internal capitalization omitted).

2. The court will hold a pretrial conference in adversary proceeding no. 16-2193 on **April 26, 2017, at 1:00 p.m.** by telephone. To appear by telephone, one must call the court conference line at 1-888-684-8852, and enter access code 7183566 before the scheduled hearing time. The parties should be prepared to address what further proceedings are necessary to conclude the adversary proceeding in light of this decision.

March 31, 2017

G. Michael Halfenger
United States Bankruptcy Judge