UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF WISCONSIN

**In re:**

**MICHAEL A. GRAL,** *et al.*,[1]

Debtors.

Case No. 16-21329-GMH
Chapter 11 Proceedings

Jointly Administered

**MOTION TO OBTAIN DOCUMENTS AND TAKE EXAMINATION
OF CAPITAL VENTURES, LLC PURSUANT TO RULE 2004**

Nancy Cigno Margolis ("Movant") moves, pursuant to Fed. R. Bank. P. 2004, for an order authorizing Movant to conduct oral examination under oath of the debtors Capital Ventures, LLC and Michael A. Gral within 30 days after an order is entered approving this motion, and directing them to produce documents described below within 21 days after an order is entered. In support of this motion, the Movant states as follows:

**Jurisdiction**

1. Capital Ventures, LLC ("Capital Ventures") and Michael A. Gral ("M. Gral" and jointly, the "Debtors") each filed for relief under Chapter 11 of the Bankruptcy Code on February 20, 2016. They continue to operate their businesses pursuant to §§ 1107(a) and 1108 of the Bankruptcy Code.

2. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and

---

[1] The court is jointly administering *In re Michael Gral,* Case No. 16-21329 and *In re Gral Holdings Key Biscayne, LLC,* Case No. 12-21330; and, separately, the court is jointly administering *In re Michael Gral,* Case No. 16-21329 and *In re Capital Ventures, LLC,* Case No. 16-21331. **This pleading relates to *In re Capital Ventures, LLC,* Case No. 16-21331 and *Michael A. Gral*, Case No. 16-21329.**

Jerome R. Kerkman
Evan P. Schmit
Kerkman Wagner & Dunn
839 North Jefferson Street, Suite 400
Milwaukee, WI 53202-3744
Phone: 414.277.8200
Facsimile: 414.277.0100
Email: jkerkman@kwdlaw.com

1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (B). It is a matter concerning the administration of the Debtors' estates, and the allowance or disallowance of claims against the estates.

**Factual Background**

4. On March 7, 2016, the Capital Ventures filed its schedules of assets and liabilities. (dkt. no. 25). It scheduled Prospect Avenue Holdings, LLC ("Prospect Avenue") as having a nonpriority unsecured claim in the amount of $215,594.41.

5. On January 26, 2018, Movant filed a Motion to Obtain Documents and Take Examinations Pursuant to Rule 2004. The January motion sought documents from and the examination of a representative of Prospect Avenue and M. Gral, as the representative of Capital Ventures.

6. On February 15, 2018, the Court held a hearing on the January motion. At the hearing, the Court granted the motion in part and denied it in part. The Court authorized the Movant to proceed with issuing subpoenas for documents from and an examination of Prospect Avenue Holdings but not of Capital Ventures.

7. On March 21, 2018, Movant took the examination of Donald J. Gral, Michal A. Gral's brother, as the designated representative of Prospect Avenue. Prospect Avenue also produced documents pursuant to this Court's February 26, 2018 Order, dkt. 1186.

8. During the examination, Movant learned that Capital Ventures owed approximately $449,626 on a line of credit with BMO Harris Bank as of August 31, 2011 (the "LOC").

9. The LOC was secured by a second mortgage on the Capital Venture's property.

The LOC originated on March 28, 2005.

10. As of August 31, 2011, the "Owner Equity-Michael A. Gral" of Capital Ventures showed a negative amount: **$(517,736)**. Capital Venture's balance sheet as of August 31, 2011 is attached (the "8/31/11 BS"). Mr. Gral identified it at his examination as part of Exhibit C.

11. From viewing the 8/31/11 BS alone, a logical conclusion is that the proceeds from the LOC of **$449,626** went directly to M. Gral. Donald J. Gral admitted the 8/31/11 BS supported this conclusion.

12. The conclusion is reached from understanding how the "Owner Equity – Michael A. Gral" account is determined. It is the sum of the following:

    (a) The accumulated Owner's Equity from the previous year; plus

    (b) "Capital Contribution-Michael A. Gral;" minus

    (c) "Owner Draw-Michael A. Gral;" plus

    (d) "Net Income."

13. Prospect Avenue produced the Balance Sheets of Capital Ventures dated December 31, 2011 through 2017. They consistently showed positive "Net Income" even after accounting for approximately $20,000 per year in depreciation. From 2011 to 2017, the reported Net Income, excluding miscellaneous income from debt forgiveness was: $(10,248), $(7,259), $(8,098), $9,815, $46,586, $113,211 and $49,506.

14. If the net income was positive before 2011, the logical reason for Owner Equity of **$(517,736)** is that M. Gral took more money from Capital Ventures than the accumulated net income; more to the tune of **$517,736.** The logical source of the money is the LOC.

15. Effectively, Prospect Avenue made a loan to M. Gral with Capital Ventures as the conduit. Now Prospect Avenue and Capital Ventures want to be repaid with equity that belongs

3

to the creditors. The money paid by Prospect Avenue went to M. Gral. Under § 510(c)(1), the claim should be equitably subordinated to the same level as the equity interest holders.

16. In order to determine how much of the $517,736 M. Gral took, (a) the tax returns for Capital Ventures, (b) detail accounts for codes 3000 to 3890 on Capital Venture's financial software (which are relevant based upon the attached 8/31/11 BS) and (c) annual internally produced balance sheets and income statements for Capital Ventures for the period December 31, 2004 through December 31, 2010 must be produced. The time period is immediately before the LOC dated March 28, 2005 up to the time before information was produced. If the taxable income and expenses of Capital Ventures is only reported on the tax returns for M. Gral, then the portions of his tax returns for 2004 through 2011 that show the income and expenses of Capital Ventures is needed.

17. During the examination on March 21, 2018, the Movant realized this information, namely (a) detail for codes 3000 to 3890 from Capital Venture's financial software, (b) the annual internally generated balance sheets and income statements for Capital Ventures also on its financial software and (c) the tax returns for December 31, 2004 through December 31, 2010 (the "Requested Financial Documents") was necessary to determine how much of the money paid by Prospect Avenue went directly to M. Gral and for no benefit of the Debtor. Both Prospect Avenue and Capital Ventures by their counsel attending the examination refused to voluntarily produce the information.

18. Mr. Gral's examination also showed that numerous strawmen were used as conduits for the transfer of funds. Attached are two pages from a documents produced at the examination with the name, "sequence inc." in the lower right-hand corner. The sequence inc. report appears to be an expert witness report from the Bielinski Brothers v. Gral action. Mr. Gral

identified the document and it was marked Exhibit A. It shows "2011 Loans involving LDG Investments, LLC." This flow of funds shows how Prospect Holdings acquired funds to make a payment to Harris Bank to which the LOC was owed. Prospect Holdings claims its debt arises from the payment of the LOC owed to Harris Bank. The pages also show numerous other funds flowing through persons and entities that were merely conduits. The pattern of using persons as strawmen or conduits requires information regarding the transfers of funds by M. Gral from the funds he received from Capital Ventures. In other words, how much of the **$517,736** that M. Gral received from Capital Ventures was lent/paid/transferred to others that could have, in turn, paid Capital Ventures to retire the LOC? Only complete accounting of the transfers from M. Gral to others after receiving funds from Capital Ventures can determine the amount. A fourth and fifth request for documents, (d), is for the balance of the sequence inc. report and (e) an accounting from M. Gral of any distributions that he received from Capital Ventures. (Collectively, the documents identified in (a) through (e) are referred to as the "Requested Financial Documents.")

## Relief Requested

19. The Movant respectfully requests that the Court enter an order requiring the Capital Ventures and M. Gral to produce the Requested Financial Documents within 21 days after an order is entered and appear for an oral examinations under oath at the offices of the Movant's counsel with 35 days after the order is entered.

20. The matters for the examinations include the Requested Financial Documents, and the payment of money to M. Gral from Capital Ventures, Prospect Avenue or any other "insider" as defined by the Bankruptcy Code. Transactions with other insiders is necessary to determine if money went from Capital Ventures to another entity and then to another person as the debtors have previously done.

5

21.     The documents produced at the March 21, 2018 examination show several transfers before being received by Prospect Holdings and then purportedly used for the benefit of Capital Ventures/M. Gral. (See attached documents with "sequence inc." on the lower right-hand side.)

## Basis for Relief

22.     Fed R. Bankr. P. 2004 provides that "[o]n motion of any party in interest, the court may order the examination of any entity." The examination may relate to the "acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate." *Id*.

23.     The scope of potential inquiry under Rule 2004 examinations is broad, and great latitude of inquiry is permitted. *In re Mittco*, 44 B.R. 35, 36 (Bankr. E.D. Wis. 1984). The inquiry under an examination may "cut a broad swath through the debtor's affairs, those associated with him, and those who might have had business dealings with him." *In re Johns-Manville*, 42 B.R. 362, 364 (S.D.N.Y. 1984). The scope of a Rule 2004 examination is broad, and may be compared with a "fishing expedition." *In re Hammond*, 140 B.R. 197, 201 (S.D. Ohio 1992).

24.     Typically, "[w]hen a party seeks to conduct a 2004 examination, and the party to be examined objects, the former must show that it has 'good cause' to conduct the examination." *In re Countrywide Home Loans, Inc.,* 384 B.R. 373, 393 (Bankr. W.D. Pa. 2008). Whether there is good cause to use the Rule 2004 powers to further an investigation requires consideration of the totality of the circumstances taking into account all relevant factors, and applying a balancing test weighing the benefit to the examiner against the intrusiveness of the examination. *Id.* If the inquiry seeks "far-reaching information on policies and procedures" of general business affairs,

intrusiveness is high and thus the benefit must be greater. *Id.* In comparison, the more tightly focused the inquiry is into a particular relationship with a debtor, the less intrusive it is, and consequently a lesser benefit is necessary for a showing of good cause. *Id.*

**Argument**

25. The Court denied the January 2018 motion as it pertained to Capital Ventures because it did not appear necessary at the time. That has now changed. The Requested Financial Documents are necessary to confirm that the money paid by Prospect Avenue was used so that M. Gral could receive more than $500,000 from Capital Ventures.

26. The documents and testimony will provide factual support to subordinate Prospect Avenue's claim against Capital Ventures to all other creditors. Prospect Avenue made a capital contribution to Capital Ventures, not a loan, in order to funnel money to M. Gral.

27. The burden on the two Debtors is minimal. The examination on March 21st took approximately two hours. The one sought now will likely take the same amount of time or less.

28. Production of (a), M. Gral's tax returns, have likely been sought through other discovery and should be readily available.

29. Production of (b) and (c) of the Requested Financial Information, namely, (a) detail for codes 3000 to 3890 from Capital Venture's financial software and (b) the annual internally generated income and expense statements for Capital Ventures should take 10 minutes. Production should involve searching existing financial software by codes and printing the information out. For example the August 2011 Balance Sheet attached has a date of March 19, 2018 and a time-stamp of 12:46 PM. This shows it was obtained from financial software.

30. Production of (d), the balance of the sequence inc. report, likewise is readily accessible since portions of it were just produced.

31. Finally, production of (e), an accounting from M. Gral of any distributions that he received from Capital Ventures and his disbursement of them, should involve producing his personal financial records – effectively his checkbook. This information should be readily available since it likely was previously provided in litigation or to sequence inc. so it could complete its report.

32. In conclusion, the Debtors' burden to comply with providing the Requested Financial Information should be one to two hours. The time for examinations should be less than two hours with maybe another hour for prepping. This minimal burden is weighed against the allowance or disallowance of an insider's claim of $215,594 and learning the truth. There is no comparison. The production of the documents and examinations should be permitted.

## Conclusion

For the reasons stated, the Movant requests that (i) the debtors Capital Ventures and M. Gral produce the Requested Financial Documents within 21 days after the Court enters an order approving this motion, (ii) the Debtors appear for an examination under oath within 35 days after an order is entered, and (iii) other relief as is just be granted.

Dated: March 22, 2018.

> */s/ Jerome R. Kerkman*
> Jerome R. Kerkman
> Evan P. Schmit
> Kerkman Wagner & Dunn
>
> Attorneys for Nancy Cigno Margolis

P.O. Address:

839 North Jefferson Street, Suite 400
Milwaukee, WI 53202-3744
Telephone: 414.277.8200
Facsimile: 414.277.0100
Email: eschmit@kwdlaw.com