In re:

Michael A. Gral[1],

        Debtor-in-Possession.

Case No. 16-21329
Chapter 11

Jointly Administered

# FOURTH AMENDED PLAN OF REORGANIZATION

Capital Ventures, LLC, Debtor and Debtors-in-Possession ("Debtor") submits the following Fourth Amended Plan of Reorganization (the "Plan") pursuant to the provisions of Chapter 11 of the United States Bankruptcy Code.

## ARTICLE I
## DEFINITIONS

For purposes of the Plan of Reorganization, the following terms shall have the meanings as set forth below (such meanings to be equally applicable to the singular and plural forms of the terms defined, unless the context otherwise requires). Those terms not specifically defined herein shall have the meanings ascribed to them in the Bankruptcy Code.

1.1    "Administrative Claim" shall mean a claim under Section 503(b) of the Bankruptcy Code, which is entitled to priority under Section 507(a)(1) of the Bankruptcy Code.

1.2    "Allowed Claim" shall mean that portion of a claim which: (a) has been scheduled, other than a claim scheduled as disputed, contingent or unliquidated; or (b) as to which a proof of claim has been filed with the Bankruptcy Court, for which no objection to the allowance thereof has been made Court; or (c) as to which the Bankruptcy Court has entered a Final Order allowing such claim or any portion thereof.

1.3    "Bankruptcy Code" shall refer to Title 11 of the United States Code, as amended from

---

[1] The court is jointly administering *In re Michael A. Gral*, Case No. 16-21329 and *In re Gral Holdings Key Biscayne, LLC,* Case No. 16-21330; and, separately, the court is jointly administering *In re Michael A. Gral*, Case No. 16-21329 and *In re Capital Ventures, LLC,* Case No. 16-21331. **This pleading relates only to *In re Capital Ventures, LLC,* Case No. 16-21331.**

time to time.

1.4    "Bankruptcy Court" shall mean the United States Bankruptcy Court for the Eastern District of Wisconsin, and any court having jurisdiction to hear appeals therefrom.

1.5    "Bankruptcy Rules" shall refer to the rules adopted by the United States Supreme Court to govern the practice and procedure in bankruptcy cases under the Bankruptcy Code.

1.5A    "Cigno" shall mean the holder of the Cigno Margolis Claim. Presently, the holder is Nancy Margolis Cingo. "Cingo" also includes former holders of the claim, including The Estate of Peter Margolis.

1.5B    "Cigno Margolis Claim" shall mean Claim No. 1 on the Court's Claim Docket filed on March 26, 2016 by the Estate of Peter Margolis, amended on April 21, 2016, May 11, 2016 and May 17, 2016 and subsequently assigned to Nancy Cigno Margolis.

1.6    "Claim" shall mean a claim as defined in Section 101(5), Bankruptcy Code.

1.7    "Creditor Trustee" shall mean Seth Dizard, Esq., or such other person as designated by the Bankruptcy Court.

1.8    "Debtor" shall mean the Debtor and Debtor-in-Possession herein.

1.9    "Effective Date of the Plan" shall mean the first business day after the date on which there is a Final Order confirming the Plan of Reorganization.

1.10A    "GH Key Biscayne" shall mean Gral Holdings Key Biscayne, LLC.

1.10B    "Lien" shall have the meaning stated in Section 101(37), Bankruptcy Code.

1.11    "Final Order" shall mean an Order which has been entered on the docket maintained by the Clerk of the Court for the Debtor's bankruptcy case, and (a) concerning which no timely appeal has been filed, relative thereto; or (b) concerning which a timely appeal has been filed relative thereto, but no stay pending appeal was obtained; or (c) concerning which a timely appeal was filed relative thereto and a stay pending appeal was obtained, and such appeal has been ultimately determined or dismissed.

1.12    "Property of the Estate" shall mean property of the Debtor's estate as defined in Section 541, Bankruptcy Code.

1.13 "Secured Claim" shall mean a claim secured by a security interest, mortgage, encumbrance or lien, or any combination thereof, against real or personal property of the estate or the proceeds therefrom, to the extent that the amount of such Secured Claim does not exceed the value of the property securing it.

1.14 "Silver Spring Property" shall mean the real property owned by Capital Ventures, LLC, located at 429 W. Silver Spring Dr., in Glendale, Wisconsin and more particularly described in the legal description incorporated in the mortgage attached to Town Bank's proof of claim filed in this Bankruptcy case as Claim 5 on the Claims Docket for Bankruptcy Case number 16-21331 gmh.

## ARTICLE II
## CLASSIFICATION OF CLAIMS

The Claims shall be divided into the following classes:

2.1 <u>Class 1 Claims</u>. Class 1 Claims consist of all Claims entitled to priority under §507(a)(1) of the Code, including generally all administrative expenses incurred in the Chapter 11 case, as allowed by the Bankruptcy Court.

2.2 <u>Class 2 Claim</u>. The Class 2 Claim consists of the Allowed Secured Claim of Town Bank.

2.3 <u>Class 3 Claim</u>. The Class 3 Claim consists of the Cigno Margolis Secured Claim.

2.4 <u>Class 4 Claims</u>. The Class 4 Claims consist of the General Unsecured Claims.

2.5 <u>Class 5 Claim</u>. The Class 5 Claim consists of the interest of Michael A. Gral as a member of the Debtor.

## ARTICLE III
## TREATMENT OF ADMINISTRATIVE CLAIMS

3.1 <u>Class 1 Claims</u>. The Class 1 Claims for professional fees consist of the fees to be awarded to Debtor's counsel in the anticipated amount of $125,000.00, and any accrued but unpaid fees to the United States Trustee.

# ARTICLE IV
# TREATMENT OF SECURED CLAIMS
# UNDER THE PLAN

4.1  <u>Class 2 Claim</u>.  The Class 2 Claim consists of the Allowed Secured Claim of Town Bank, its successors and assigns ("Town Bank"), which has a first mortgage on Debtor's property at 429 W. Silver Spring Drive.

(a) Renewal Promissory Note.  On the Effective Date, the Debtor shall enter into and deliver to Town Bank an originally executed renewal promissory note in the same form and substance as the sample attached hereto as **Exhibit A** (the "Renewal Note"). The principal amount of the Renewal Note shall be the balance owed on the Secured Claim of Town Bank as of the Effective Date, as determined by the loan accounting system of Town Bank.  The loan date of the Renewal Note will be the Effective Date. The maturity date of the Renewal Note shall be July 7, 2020. The amortization period used to determine the amount of the monthly principal and interest payments shall be 15 years. The first payment under the Renewal Note shall be due on the 7th day of the month of the Effective Date if the Effective date is between the 1st and the 7th day of the month, and shall be the 7th day of the month following the month of the Effective date if the Effective date is the between the 8th and the last day of the month. The interest rate of the Renewal Note shall be 6.000% per year.  In addition to the installment payments required under the Renewal Note, the Debtor shall make a monthly tax escrow payment to Town Bank of one-twelfth (1/12) of the prior year taxes at the same time as each installment payment is due under the Renewal Note. If the Debtor does not deliver an originally executed Renewal Note conforming with the conditions stated herein, the Debtor shall be in default of this Plan.

(b) Impairment.  The Allowed Secured Claim of Town Bank is impaired.

(c) Amount.  Town Bank's total Allowed Secured Claim is deemed to be $1,070,264.21 as of the Petition Date. The amount paid to satisfy Town Bank's Allowed Secured Claim shall be adjusted as follows: The payments received by Town Bank between the date of the filing of this bankruptcy case and the Effective Date shall be applied to reduce the amount due on Town Bank's Secured Claim in the

4

Case 16-21329-gmh    Doc 1486    Filed 07/24/18    Page 4 of 19

manner required by its prepetition loan documents. Interest at the rate applicable which is 8.5%, reasonable attorney fees and expenses, all as provided in the prepetition loan documents, shall be added to Town Bank's Secured Claim prior to application of any payments made by the Debtor to Town Bank after the filing of this bankruptcy case.

(d) Retention of Liens. Town Bank shall retain its existing liens on the Silver Spring Property and all of its collateral to secure its Claim and the Renewal Note shall be secured by such lien and collateral with the same lien priority as existed immediately prior to the filing of this bankruptcy case.

(e) Prepetition Loan Documents. Town Bank's prepetition loan documents shall remain in full force and effect, with the exception that the Renewal Note shall replace the existing promissory note as provided herein, until the amount due Town Bank under is fully paid.

(f) Anti-Modification Provision. Notwithstanding any other provision of this Chapter 11 Plan, No provision of this Section 4.1 may be modified post-confirmation without the written consent of Town Bank, its successors and assigns.

(g) The treatment that Debtor is giving Town Bank herein (including, but not limited to, Article XI) is based upon Town Bank's representation that it shall timely cast a vote accepting this Plan.

4.2 <u>Class 3 Claim</u>. The Class 3 Claim consists of the Cigno Margolis Claim. It shall be treated under the Plan as follows:

(a) Allowance. The Cigno Margolis Claim is an Allowed Claim in the amount of $750,000 as of June 10, 2018 (the "Allowed Cigno Margolis Claim"). The allowed amount claim includes all interest, attorney fees and costs accrued and incurred after the filing of the petition, February 20, 2016, through June 9, 2018.

(b) Interest and Attorney Fees and Costs. Interest at the rate of 4.25% per annum shall accrue on the Allowed Cigno Margolis Claim commencing on June 10, 2018. There shall be no liability for attorney fees and costs unless there is a default under the Plan by the Debtor.

(c) Security. The existing mortgage securing the Allowed Cigno Margolis Claim shall continue

5

Case 16-21329-gmh    Doc 1486    Filed 07/24/18    Page 5 of 19

as a Lien on the Silver Spring Property to secure the amount due on the claim, including all amounts due under this Plan and the plan of reorganization for GH Key Biscayne.

(d) Payments. Commencing on the tenth day of the first month after the Effective Date of the Plan, the Debtor shall make equal monthly installments of interest only at the rate of 4.25% until December 31, 2019. Commencing on January 10, 2020, the Debtor shall make equal monthly installments of principal and interest at a rate of 4.25% per annum amortized over 30 years based upon a principal amount of $750,000. Initial monthly installments will be $3,690. (if there is no principal reduction). The entire unpaid principal balance, accrued interest, and any other amounts due under the Plan or the plan of reorganization of GH Key Biscayne shall be due on the fourth anniversary of the Effective Date of the Plan. Payments shall be applied in the following order: (i) attorney fees, costs and expenses owed under the Plan or the GH Key Biscayne plan of reorganization, (ii) interest due under the Plan, and (iii) principal.

(e) Adjustment for GH Key Biscayne Payments. The Allowed Cigno Margolis Claim in the principal amount of $750,000 shall be reduced by any payments received under GH Key Biscayne's plan of reorganization due to the sale of its assets or otherwise, and principal received pursuant to this Plan. Upon payment of a principal amount due on the Allowed Cigno Margolis Claim from GH Key Biscayne, the monthly installment shall be adjusted to reflect the reduced principal amount; the amortization period shall be reduced by the time that has elapsed from the commencement of the monthly installments.

(f) Costs of Collection. If the Debtor or GH Key Biscayne defaults in their obligations to Cigno under their respective plans of reorganization, Cigno shall be entitled to reasonable attorney fees, costs and expenses and interest at a default rate of 10% per annum to enforce her rights. The terms for defaults are set forth in the respective plans of reorganization, mortgages and security instruments. The failure to make any installment due on the Cigno Margolis Claim within ten (10) days after it is due is a material default under the Plan.

(g) Objection to Cigno Margolis Claim. The Plan resolves the objection to the Cigno Margolis Claim and all pending disputes involving it in this Court.

(h) Satisfaction of the Allowed Cigno Margolis Claim. Upon payment of the entire amount due on the Allowed Cigno Margolis Claim as provided in this Plan and GH Key Biscayne's plan of reorganization, the Allowed Cigno Margolis Claim is fully satisfied.

(i) Mutual Releases. Except for any obligations of the Cigno, the Debtor and Capital Ventures under their respective plans of reorganization, the Debtor and Nancy Cigno Margolis release each other, and their respective agents and lawyers, from any Claims the Debtor and Nancy Cigno Margolis may have.

(j) First Mortgage Refinancing. The Debtor shall use its best efforts to refinance the existing mortgage debt owed to Town Bank and, as a part of the refinancing, fully pay off the Allowed Cigno Margolis Claim. However, it the Debtor is unable to fully pay off the Cigno Margolis Claim, Cigno will subordinate her position to a new lender that satisfies the Allowed Claim of Town Bank in an amount equal to the amount owed Town Bank as of the Effective Date of the Plan plus reasonable costs of refinancing plus any amount from the refinancing used to pay the Allowed Cigno Margolis Claim.

(k) Glendale Medical entities and Margolis Gral. Nothing in the Plan affects the rights of Nancy Cigno Margolis as a member of Margolis Gral LLC, the rights of Julia and Michael A. Gral, or their respective rights as to any entity relating to the management and operation of Glendale Medical Office building, including but not limited to Integral Medical, LLC., Integral Management LLC.

## ARTICLE V
## TREATMENT OF OTHER CLAIMS
## UNDER THE PLAN

5.1 <u>Class 4 Claims</u>. The Class 4 Claims are the General Unsecured Claims. Old National Bank f/k/a Anchor Bank, is owed $104,859.13.

Old National Bank's Claim will be paid in full as follows: on July 30, 2018 - $27,389.77 and on July 30, 2019, 2020, 2021, and 2022 - $19,367.34. Interest shall accrue on the unpaid balance at 5% per annum commencing on the Effective Date of the Plan. Accrued but unpaid interest shall be paid along with the final payment.

Also included in the Class 4 Claims are the Claim of Chernov Stern & Krings, SC, in the amount

7

of $121,003.19 and the Claim of the law firm of Thomadsen & Hoeschen, LLC in the amount of $40,259.48. These two Claims have agreed to accept a 100% plan with interest and will be paid as follows: $16,126.27 per year for a period of five (5) years with the first payment being made on October 1, 2018, and on the next four (4) anniversary dates in 2019, 2020, 2021, and 2022. The Class 4 Claims shall be paid $35,693.61 on October 1, 2023 and October 1, 2024. A final payment of $9,254.10 shall be paid on October 1, 2025. Interest shall accrue on the unpaid balance at the rate of 5% per annum. All unpaid interest shall be paid along with the last payment on October 1, 2025.

5.2 <u>Class 5 Claim</u>. The Class 5 Claim is the interest of Michael A. Gral as a member of the Debtor, which Michael A. Gral shall retain.

5.3 <u>UCC Claim</u>. The Official Committee of Unsecured Creditors of Michael A. Gral ("UCC) has received an assignment of the claim of Bielinski Brothers, Inc., which claim has been objected to by the Debtor. The UCC and Bielinski shall receive nothing from this Plan.

5.4 <u>Prospect Avenue Holdings, LLC ("PAH") Claim</u>. PAH is an insider that has a Class 4 Claim for $215,594.41. Debtor shall not pay any sums on the PAH Claim if such payment would affect Debtor's ability to pay other Class 4 Claims.

## ARTICLE VI
## MEANS FOR EXECUTION OF THE PLAN

6.1 The execution of the Plan shall be accomplished by the following means and with funds provided from the following sources:

(a) Cash flow from the Debtor; and

(b) Possible re-finance or sale of Debtor's real property.

## ARTICLE VII
## TREATMENT OF EXECUTORY CONTRACTS AND LEASES

7.1 The lease with Debtor with Steinhafels at 429 W. Silver Spring Drive will be assumed under the Plan. To the extent there may be other executory contracts, they shall be deemed rejected by virtue of the Plan.

# ARTICLE VIII
# MODIFICATION OF PLAN

8.1     By Order of the Bankruptcy Court made at any time prior to Confirmation of the Plan, Debtor may amend or modify the Plan.  After Confirmation of the Plan, the Debtor, pursuant to 11 U.S.C, Section 1127(b), and other provisions of the Bankruptcy Code and Bankruptcy Rules, may apply to the Bankruptcy Court for a modification of the Plan to remedy defects or omissions or reconcile inconsistencies therein, as may be necessary to carry out the purposes, intent and effect of the Plan.

# ARTICLE IX
# JURISDICTION BY THE BANKRUPTCY COURT

9.1     The Bankruptcy Court shall continue to maintain jurisdiction subsequent to Confirmation of the Plan for the purpose of:

(a)     Fixing the allowance of any Claim or request for the allowance of fees and expenses as a cost and expense of the administration of the reorganization case;

(b)     Re-examining any Claim or interest which has been allowed as of the date of confirmation;

(c)     Hearing and determining any objection to a Claim which is filed with the Bankruptcy Court;

(d)     Hearing and determining the extent, priority and validity of any lien or interest asserted by any party against the assets of the estate;

(e)     Hearing and determining any action brought by the Debtor, or any representative of the Debtor, seeking to avoid any transfer of an interest of the reorganized Debtor in property or in any obligation incurred by the Debtor, that is avoidable or voidable pursuant to the provisions of the Bankruptcy Code;

(f)     Hearing and determining all causes of action, controversies, disputes, or conflicts between the Debtor and any other party which were pending prior to confirmation;

(g)     Determining all questions and disputes regarding title to the assets comprising the estate;

(h)     Correcting any defect, curing any omission or reconciling any inconsistency in the Plan, or the order of confirmation as may be necessary to carry out the intent of the Plan;

(i)     Confirming a modified Plan proposed by the Debtor pursuant to Section 1127(b) of the Bankruptcy Code;

(j)     Hearing and determining any dispute relating to the terms or implementation of the Plan, or order of confirmation, or to the rights and obligations of the parties in interest with respect thereto;

(k)     Issuing any Order necessary to implement the Plan or order of confirmation, including without limitation, such declaratory and injunctive Orders as are appropriate to protect the Debtor and the Debtor's estate, and holders of Claims to be paid or otherwise treated under the Plan of Reorganization;

(l)     Making such affirmative Orders as may be necessary in connection with proper implementation of the Plan; and

(m)     Entering an Order concluding and terminating the reorganization case.

## ARTICLE X
## EFFECT OF CONFIRMATION

10.1     Except as otherwise provided in this Plan or the order confirming the Plan, the confirmation of the Plan shall bind the Debtor and all holders of Claims, whether or not the foregoing persons are impaired under the Plan, and whether or not any of the foregoing persons have accepted the Plan.

10.2     Except as provided for in 11 U.S.C. Section 1141(d)(2) and (d)(3), and except as otherwise provided in the Plan or in the order confirming the Plan, the Property of the Estate shall be free and clear of all Claims.

10.3     Notwithstanding any other provision of this Chapter 11 Plan, all Property of the Estate shall remain Property of the Estate post-confirmation and post-Effective Date, until all payments required to be made under this Chapter 11 Plan have been made.

10.4     Except as otherwise provided in the Plan or in the order confirming the Plan, the effect of the confirmation of the Plan shall be governed by 11 U.S.C. Section 1141.

10.5     Notwithstanding any other provision of this Chapter 11 Plan, the Debtor shall not receive a discharge under 11 U.S.C. Section 1141 until all payments required to be made under this Chapter 11 Plan have been made.

# ARTICLE XI
# APPOINTMENT OF CREDITOR TRUSTEE

11.1    Creditor Trustee.

(a)    Appointment. Upon any default of a payment required to be made by Capital Ventures, LLC ("Capital Ventures") to Town Bank under the Renewal Note, upon Capital Ventures' failure to timely deliver real estate tax escrow payments to Town Bank, upon Capital Ventures' failure to maintain continuous hazard insurance on the Silver Spring Property in compliance with the Town Bank prepetition loan documents, or if Capital Ventures fails to deliver a fully executed Renewal Note to Town Bank on the Effective Date, Town Bank may file an affidavit of default with the Bankruptcy Court, setting forth the event of default, and as promptly thereafter as is practicable, the Bankruptcy Court shall appoint the Creditor Trustee as managing member of Capital Ventures as of the date of entry of the Order appointing the Creditor Trustee. He (or she) shall continue in the role of Creditor Trustee until after the Silver Spring Property is sold, its proceeds distributed and all matters under this Plan have been resolved. Once s/he certifies they have been resolved, s/he shall be deemed to have resigned as managing member of Capital Ventures. After his or her resignation, the Michael and Julia Gral Living Trust, as the sole owner of the equity interests in Capital Ventures, may elect a new managing member. No bond is required by the Creditor Trustee.

(b)    Authority and Powers. The Creditor Trustee shall have the following authority and powers:

(i)    To manage the Debtor's business, including the Silver Spring Property. The management shall include all leasing activities, negotiating and communicating with the tenant, collecting rents and other account receivables, paying bills and expenses, contracting with third-parties for repairs and services needed for the Silver Spring Property, and maintaining the books.

(ii) To file an objection to any Claim, request for allowance of an administrative expense, and any other pleading that benefits the creditors or is necessary to implement this Chapter 11 Plan, including pleadings to close this bankruptcy case and obtain a final decree.

(iii) To retain real estate agents, real property managers, attorneys, including him or herself, bookkeepers and accountants to assist the Creditor Trustee implement this Plan, comply with requirements to conclude this bankruptcy case, comply with applicable law to operate the Debtor's business, and any other responsibilities of the Creditor Trustee.

(iv) To sell, transfer or encumber the assets of the Debtor post-confirmation, including the Silver Spring Property.

(v) To receive reasonable compensation for his/her services as the Creditor Trustee and as attorney to represent the Debtor post-confirmation.

(vi) To open bank accounts and make payments on any obligations owed by the post-confirmation Debtor or the Debtor, pursuant to this Chapter11 Plan.

(vii) To take any action outside of the Bankruptcy Court to protect the interests of the creditors of this bankruptcy case or Capital Ventures as the post-confirmation Debtor.

(viii) To take all action to implement this Chapter 11 Plan and comply with applicable law.

(c) Resignation or Removal of the Creditor Trustee. The Creditor Trustee may resign. The Creditor Trustee may also be removed by the following procedure:

(i) Three Classes out of Classes 2 through 4 may vote to remove the Creditor Trustee. Any Class may file a motion with the Bankruptcy Court to remove the Creditor Trustee for fraud or gross mismanagement.

12

Case 16-21329-gmh    Doc 1486    Filed 07/24/18    Page 12 of 19

(ii) In order to constitute a vote or approval by a Class hereunder, including actions relating to the Creditor Trustee, 50% or more of the holders of non-insider Allowed Claims in a Class holding two-thirds of the dollar amount of non-insider Allowed Claims in such Class must agree to the vote or approval. Votes of insiders shall not count as a vote hereunder.

(iii) If the Creditor Trustee resigns or is removed, two Classes out of Classes 2 through 4 must approve the successor Creditor Trustee. If no two Classes of out of 4 approve the successor Creditor Trustee, the Court after a hearing on notice to the creditors in Classes 2 through 4 and the Creditor Trustee shall appoint a successor Creditor Trustee.

11.2 Sale of the Debtor's Assets, including the Silver Spring Property (only available upon appointment of a Creditor Trustee).

(a) Discretion in marketing assets. The Creditor Trustee shall have complete discretion in marketing the assets, including the Silver Spring Property.

(b) Discretion to accept offers. The Creditor Trustee shall have complete discretion to accept an offer on the Silver Spring Property and other assets of Capital Ventures. Provided however that if the offer has a gross sales price of less than $1.9 million, the Creditor Trustee's discretion is subject to the following conditions:

(i) Offers with a gross sales price of $1.7 to $1.899 million must be approved in writing by Class 4 pursuant to the approval procedures in Section 11.1(c)(ii) above. Provided however, the Bankruptcy Court after notice and a hearing can approve the offer if it finds that the offer is the highest and best that can be obtained after reasonable marketing efforts.

(ii) Offers with a gross sales price of $1.1 to $1.699 million must be approved in writing by Classes 3 and 4. Provided however, the Bankruptcy Court after notice and a hearing can approve the offer if it finds that the offer is the highest and best that can be obtained after reasonable marketing efforts.

(iii) Offers with a gross sales price of less than $1.1 million cannot be accepted unless the Bankruptcy Court after notice and a hearing finds that the offer is the highest and best that can be obtained after reasonable marketing efforts.

(c) Standing of a Person to challenge offers. Only non-insider creditors within Classes whose approval in writing for an offer is required have the right to object to the offer in the Bankruptcy Court or be heard in opposition to the offer. Other creditors may be heard in support of the offer.

(d) Conveyance of the Silver Spring Property at closing. The Creditor Trustee, as the managing member of Capital Ventures, shall have authority to convey the Silver Spring Property and all other assets of Capital Ventures to the purchaser of the property in fee simple, subject to the conditions in Section 11.2(b) above, and liens and encumbrances of record. The lien represented by the Secured Claim of Town Bank shall be satisfied at closing by paying it in full as is customarily done at a closing, and lien represented by the Class 3 shall be satisfied at closing by paying it as provided herein.

(e) Distribution of Proceeds from the Sale of the Silver Spring Property. The proceeds from the sale of the Silver Spring Property will be distributed in the following order of priority:

(i) The costs of the sale, including brokerage fees, title insurance fees, real estate tax prorations, etc.

(ii) The Allowed Secured Claim of Town Bank in Class 2, which shall be paid upon the closing of the sale.

(iii) Expenses of the Creditor Trustee to implement this Plan, including attorney fees, the Creditor Trustee's fees, etc.

(iv) The Allowed Secured Claim of Class 3, which shall be paid upon the closing of the sale.

(v) The Allowed Claims of general unsecured creditors in Class 4, which shall be a paid approximately 60 days after the closing.

(vi) After all expenses of the Creditor Trustee and Allowed Claims in Classes 2 through 4 are fully satisfied, or an adequate reserve for them has been established, the remaining

14

proceeds from the sale of the Silver Spring Property shall be paid to the attorney for the Committee of Unsecured Creditors in the Michael A. Gral bankruptcy case, case no. 16-21329 gmh (the "Gral Bankruptcy Case"), or to a court of competent jurisdiction if the Gral Bankruptcy Case has been terminated, to be held in escrow pending further order of the Bankruptcy Court or a court of competent jurisdiction if the Gral Bankruptcy Case has been terminated.

(f) Limitation on Liability of Creditor's Trustee. The Creditor Trustee shall have no liability to any creditor, person holding a Claim, the Debtor, the Gral Living Trust, or any other party to this or any other bankruptcy case, for the Creditor Trustee's negligence or mismanagement. The only liability that the Creditor Trustee may have to anyone is for intentional fraud, not constructive fraud, and other torts that require actual intent, not constructive intent.

11.3 Pending Litigation. Automatically upon confirmation of this Chapter 11 Plan, the Debtor dismisses the adversary case entitled Capital Ventures, LLC v. Town Bank, Adv. No. 17-02041 (the "Town Bank Adversary") with prejudice and waives all claims against Town Bank stated therein, and Town Bank consents to such dismissal of the Town Bank Adversary Proceeding. The Debtor shall file pleadings requesting the formal dismissal of the Town Bank Adversary as provided herein within seven days of entry of the Order confirming this Plan.

11.4 Professional Fees and Expenses. Each Person retained or requesting compensation in this case pursuant to §§ 327, 328, 330, 503(b) or 1103 of the Code shall be entitled to file an application for allowance of final compensation and reimbursement of expenses in the case by the date set by the Bankruptcy Court.

11.5 Mailing and Unclaimed Distributions. All distributions made by the Creditor Trustee by mail will be made to (a) the latest mailing address filed of record with the Bankruptcy Court for the party entitled thereto, (b) if no such mailing address has so been filed, the mailing address reflected in the schedule of assets and liabilities filed by the Debtor or (c) any other address known to the Creditor

Trustee. Any unclaimed distribution shall be delivered to the Clerk of the Bankruptcy Court for the Eastern District of Wisconsin.

11.6 Responsible Person. After his/her appointment, and except as otherwise may be provided herein, the Creditor Trustee shall be responsible for the execution and implementation of this Plan.

11.7 Confirmation of the Plan without approval of all Classes. If any Class is entitled to vote and votes to reject this Plan, the Debtor shall request that the Bankruptcy Court approve this Plan pursuant to § 1129(b)(1) of the Code.

11.8 Payment of U.S. Trustee Fees. The Debtor shall pay all fees due pursuant to 28 U.S.C. § 1930 until the case is closed.

11.9 Professional Fees. The Debtor or Creditor Trustee shall not pay any professional fees or costs incurred before the date of entry of the Order confirming this Plan (the Confirmation Date) except as approved by the Bankruptcy Court or otherwise allowed by law. The payment of any professional fees or costs after the Confirmation Date to implement this Plan shall only be made if such fees and costs are reasonable.

Respectfully submitted this 24th day of July, 2018.

LAW OFFICES OF JONATHAN V. GOODMAN<br>
Attorneys for Debtors<br><br>
By: _____<br>
Jonathan V. Goodman

Law Offices of Jonathan V. Goodman
788 N. Jefferson St., Suite 707
Milwaukee, WI 53202
Phone: (414) 276-6760; Fax: (414) 287-1199
Email: JGoodman@ameritech.net

16

Case 16-21329-gmh    Doc 1486    Filed 07/24/18    Page 16 of 19

# PROMISSORY NOTE

| Borrower: | Capital Ventures LLC<br>1437 N Prospect Ave Suite 100<br>Milwaukee, WI 53202-3051 | Lender: | Town Bank<br>Hartland<br>850 W. North Shore Dr.<br>Hartland, WI 53029 |
|---|---|---|---|

**Principal Amount:** $ _____                              **Date of Note:**

**PROMISE TO PAY.** Capital Ventures LLC ("Borrower") promises to pay to Town Bank ("Lender"), or order, in lawful money of the United States of America, the principal amount of _____ Dollars ($ _____ ), together with interest on the unpaid principal balance from _____, calculated as described in the "INTEREST CALCULATION METHOD" paragraph using an interest rate of 6.000%, until paid in full. The interest rate may change under the terms and conditions of the "INTEREST AFTER DEFAULT" section.

**PAYMENT.** Borrower will pay this loan in _____ payments of $ _____ each payment. Borrower's first payment is due ____, and all subsequent payments are due on the same day of each month after that. Borrower's final payment will be due on ____, and will be for all principal and all accrued interest not yet paid. Payments include principal and interest. Unless otherwise agreed or required by applicable law, payments will be applied first to any accrued unpaid interest; then to principal; then to any escrow or reserve account payments as required under any mortgage, deed of trust, or other security instrument or security agreement securing this Note; and then to any late charges. Borrower will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing.

**INTEREST CALCULATION METHOD.** Interest on this Note is computed on a 365/360 basis; that is, by applying the ratio of the interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. All interest payable under this Note is computed using this method. This calculation method results in a higher effective interest rate than the numeric interest rate stated in this Note.

**PREPAYMENT.** Borrower may pay without penalty all or a portion of the amount owed earlier than it is due. Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments under the payment schedule. Rather, early payments will reduce the principal balance due and may result in Borrower's making fewer payments. Borrower agrees not to send Lender payments marked "paid in full", "without recourse", or similar language. If Borrower sends such a payment, Lender may accept it without losing any of Lender's rights under this Note, and Borrower will remain obligated to pay any further amount owed to Lender. All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: Town Bank, Hartland, 850 W. North Shore Dr., Hartland, WI 53029.

**LATE CHARGE.** If a payment is not made on or before the 5th day after its due date, Borrower will be charged **5.000% of the unpaid portion of the regularly scheduled payment**.

**INTEREST AFTER DEFAULT.** Upon default, including failure to pay upon final maturity, the interest rate on this Note shall be increased by 3.000 percentage points. However, in no event will the interest rate exceed the maximum interest rate limitations under applicable law.

**DEFAULT.** Each of the following shall constitute an event of default ("Event of Default") under this Note:

  **Payment Default.** Borrower fails to make any payment when due under this Note.

  **Other Defaults.** Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Note or in any of the related documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower.

  **Default in Favor of Third Parties.** Borrower or any Grantor defaults under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Borrower's property or Borrower's ability to repay this Note or perform Borrower's obligations under this Note or any of the related documents.

  **False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf under this Note or the related documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

  **Insolvency.** The dissolution or termination of Borrower's existence as a going business, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower.

  **Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the loan. This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

  **Events Affecting Guarantor.** Any of the preceding events occurs with respect to any guarantor, endorser, surety, or accommodation party of any of the indebtedness or any guarantor, endorser, surety, or accommodation party dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any guaranty of the indebtedness evidenced by this Note.

  **Change In Ownership.** Any change in ownership of twenty-five percent (25%) or more of the common stock of Borrower.

  **Adverse Change.** A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of this Note is impaired.

  **Insecurity.** Lender in good faith believes itself insecure.

  **Cure Provisions.** If any default, other than a default in payment, is curable and if Borrower has not been given a notice of a breach of the same provision of this Note within the preceding twelve (12) months, it may be cured if Borrower, after Lender sends written notice to Borrower demanding cure of such default: (1) cures the default within fifteen (15) days; or (2) if the cure requires more than fifteen (15) days, immediately initiates steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

**LATE CHARGE CLARIFICATION.** For the avoidance of any doubt, the "regularly scheduled payment" referenced in the "LATE CHARGE" section

**EXHIBIT A**

above includes all payments required under the Loan Documents (including, without limitation, payments for principal, interest or escrow).

**LENDER'S RIGHTS.** Upon default, Lender may declare the entire unpaid principal balance under this Note and all accrued unpaid interest immediately due, and then Borrower will pay that amount.

**ATTORNEYS' FEES; EXPENSES.** Lender may hire or pay someone else to help collect this Note if Borrower does not pay. Borrower will pay Lender that amount. This includes, subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including attorneys' fees, expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), and appeals. If not prohibited by applicable law, Borrower also will pay any court costs, in addition to all other sums provided by law.

**JURY WAIVER.** Lender and Borrower hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by either Lender or Borrower against the other.

**GOVERNING LAW.** This Note will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Wisconsin without regard to its conflicts of law provisions. This Note has been accepted by Lender in the State of Wisconsin.

**DISHONORED ITEM FEE.** Borrower will pay a fee to Lender of $30.00 if Borrower makes a payment on Borrower's loan and the check or preauthorized charge with which Borrower pays is later dishonored.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Borrower's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Borrower holds jointly with someone else and all accounts Borrower may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Borrower authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the Indebtedness against any and all such accounts, and, at Lender's option, to administratively freeze all such accounts to allow Lender to protect Lender's charge and setoff rights provided in this paragraph.

**VARIABLE RATE.** Without affecting the liability of any Borrower, guarantor, surety or indorser, Lender may, without notice, accept partial payments on this Note at any time.

**SUCCESSOR INTERESTS.** The terms of this Note shall be binding upon Borrower, and upon Borrower's heirs, personal representatives, successors and assigns, and shall inure to the benefit of Lender and its successors and assigns.

**GENERAL PROVISIONS.** This Note benefits Lender and its successors and assigns, and binds Borrower and Borrower's heirs, successors, assigns, and representatives. If any part of this Note cannot be enforced, this fact will not affect the rest of the Note. Lender may delay or forgo enforcing any of its rights or remedies under this Note without losing them. Borrower and any other person who signs, guarantees or endorses this Note, to the extent allowed by law, waive presentment, demand for payment, and notice of dishonor. Upon any change in the terms of this Note, and unless otherwise expressly stated in writing, no party who signs this Note, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral; and take any other action deemed necessary by Lender without the consent of or notice to anyone. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made. The obligations under this Note are joint and several.

PRIOR TO SIGNING THIS NOTE, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE. BORROWER AGREES TO THE TERMS OF THE NOTE.

BORROWER ACKNOWLEDGES RECEIPT OF A COMPLETED COPY OF THIS PROMISSORY NOTE.

BORROWER:

CAPITAL VENTURES LLC

By:_____                By:_____
   Authorized Signer for Capital Ventures LLC         Authorized Signer for Capital Ventures LLC

LaserPro, Ver. 18.1.10.007 Copr. Finastra USA Corporation 1997, 2018. All Rights Reserved. - WI c:\LASERPRO\TOWN\APPS\CFI\WIN\CFI\LPL\D20.FC TR-8581 PR-6

# INITIAL ESCROW ACCOUNT DISCLOSURE STATEMENT

**Borrower:** Capital Ventures LLC
1437 N Prospect Ave Suite 100
Milwaukee, WI 53202-3051

**Lender:** Town Bank
Hartland
850 W. North Shore Dr.
Hartland, WI 53029

**Servicer:** Town Bank
850 W. North Shore Dr.
Hartland, WI 53029

Collect or Toll Free Phone: (262) 367-1900

THIS IS AN ESTIMATE OF ACTIVITY IN YOUR ESCROW ACCOUNT DURING THE COMING YEAR BASED ON PAYMENTS ANTICIPATED TO BE MADE FROM YOUR ACCOUNT.

Starting Balance: $_____

| Month | Payments to Escrow Account | Payments from Escrow Account | Description | Escrow Account Balance |
|---|---|---|---|---|
| November | | | | |
| December | | | | |
| January | | | | |
| February | | | | |
| March | | | | |
| April | | | | |
| May | | | | |
| June | | | | |
| July | | | | |
| August | | | | |
| September | | | | |
| October | | | | |

(PLEASE KEEP THIS STATEMENT FOR COMPARISON WITH THE ACTUAL ACTIVITY IN YOUR ACCOUNT AT THE END OF THE ESCROW ACCOUNTING COMPUTATION YEAR.)

Cushion selected by servicer: $_____

YOUR MONTHLY MORTGAGE PAYMENT FOR THE COMING YEAR WILL BE $_____; OF WHICH $_____ WILL BE FOR PRINCIPAL AND INTEREST AND $_____ WILL GO INTO YOUR ESCROW ACCOUNT. THE TERMS OF YOUR LOAN MAY RESULT IN CHANGES TO THE MONTHLY PRINCIPAL AND INTEREST PAYMENTS DURING THE YEAR.

BORROWER:

CAPITAL VENTURES LLC

By: _____
Authorized Signer for Capital Ventures LLC

By: _____
Authorized Signer for Capital Ventures LLC

LaserPro, Ver. 18.1.10.007 Copr. Finastra USA Corporation 1997, 2018. All Rights Reserved. - WI c:\LASERPRO\TOWN\APPS\CFI\WIN\CFI\LPL\G60.FC TR-6561 PR-8