UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF WISCONSIN

_____

In re:

                                           Case No. 16-21329

Michael A. Gral,                                          Chapter 11

        Debtor-in-Possession.

_____

**DEBTOR'S OBJECTION TO OFFICIAL COMMITTEE OF UNSECURED CREDITOR'S MOTION TO CONVERT CASE TO CHAPTER 7, OR, ALTERNATIVELY, TO DISMISS**

_____

Debtor objects to Unsecured Creditors Committee's (the "UCC") Motion:

1.     UCC Objections – General. Why is it that Debtor is seeing many of the objections of the UCC for the first time in a Motion to Convert or Dismiss? It seems that the UCC is more concerned with what assets the Debtor retains than what the General Unsecured Creditors ("GUC's") will receive, and more importantly, in comparison to what the GUC's would not receive in a Chapter 7. It again seems that the UCC members are driven by self-interest rather than acting in the best interests of all of the GUC's.

2.     Expenses of Residence. Debtor has filed 4 plans. The UCC has reviewed all 4. Not once previously has the UCC objected to Debtor's expenses of keeping his residence. One reason Debtor has proposed keeping his residence is as a means of obtaining a vote of an impaired class. The UCC alleges the Debtor is making himself the beneficiary of nearly $600,000 of equity created by mortgage payments during the plan by retaining his residence. The UCC fails to recognize that the source of the contemplated mortgage payments is the Debtor's post-confirmation earnings, so no

PREPARED BY:
Jonathan V. Goodman
Law Offices of Jonathan V. Goodman
788 N. Jefferson Street, Suite 707
Milwaukee, WI 53202
Phone: (414) 276-6760; Fax: (414) 287-1199
Email: JGoodman@ameritech.net

estate assets are being used to make mortgage payments. Indentured servitude was done away with some years ago. Further, Debtor has voluntarily contributed all of his post-petition earnings to Debtor's estate for more than three years to support Debtor's estate. Further, the UCC criticism does not account for any housing expenses for the Debtor. Debtor would willingly give up his residence under a reasonable confirmed plan with a favorable vote of the UCC. The UCC also avers that Park Bank is unfairly being stripped of its lien on Debtor's residence under the plan. The UCC fails to recognize that the Park Bank mortgage is, by its terms, subordinate to a homestead exemption, and is a mortgage that provides additional collateral for loan obligations to third parties other than Debtor and unrelated to Debtor's residence, and is in addition to other primary and additional collateral that is more than sufficient to satisfy the applicable loan obligations to Park Bank..

3. Entity Assets Sale and Refinance Proceeds Split. The UCC is critical of Debtor's proposal to "split" Debtor's proceeds from sales and refinances of the assets of entities that Debtor holds an interest so Debtor is able "to pay other obligations." The "other obligations" are primarily amounts owed to Park Bank, which has accelerated all loan obligations of Debtor and related individuals and entities, and is litigating against all obligors and guarantors and foreclosing on their real estate. Park Bank is pursing the very assets that Debtor proposes to use to pay, in part, the UCC under the plan. Consequently, Debtor considers the use of the other half other of the proceeds "split" to be justified and in the interest of the GUC's so as to receive any of such entity proceeds.

4. Debtor agrees that conversion is more appropriate than dismissal. However, regardless of whether Debtor meets the requisites to confirm a plan, and according to the UCC, is a paltry return to its creditors, Debtor's liquidation analyses (and for that matter the UCC's own liquidation analysis which is generally consistent with Debtor's analysis, as well as the UCC's

PREPARED BY:
Jonathan V. Goodman
Law Offices of Jonathan V. Goodman
788 N. Jefferson Street, Suite 707
Milwaukee, WI 53202
Phone: (414) 276-6760; Fax: (414) 287-1199
Email: JGoodman@ameritech.net

negative opinion on the viability of some of Debtor's investments); whatever Debtor proposes is more than what unsecured creditors will get in a liquidation. Debtor's counsel will be owed upwards of $300,000.00 (which counsel is willing to defer in the plan) on liquidation. Combine that with $59,000.00 owed to prior UCC counsel, estimate of $40-50,000.00 for current UCC counsel, when you consider Chapter 7 administrative expenses, there will be no distribution to unsecured creditors in a liquidation. It is a shame that the UCC was not represented by current counsel from its inception in July 2016. This counsel has engaged in an attempt to come to an agreement, despite the historic predisposition of the committee members. Prior counsel refused to negotiate and Debtor had to waste hundreds of thousands of dollars to an examiner and prior UCC counsel. Also, Park Bank did not raise its ugly head until 2 years into this case, and then resorted in this case and others to the same obstructionist tactics the UCC members utilized during the first two years of this case, so had the case proceeded more timely, that problem would not have existed to interfere with the plan. Debtor would have agreed, and continues to be willing to agree, to timely and reasonable suggestions to reach an acceptable plan.

Dated this 13th day of March, 2019.

        LAW OFFICES OF JONATHAN V. GOODMAN
        Attorneys for Debtor, Michael A. Gral

    By: /s/ Jonathan V. Goodman_____
         Jonathan V. Goodman

PREPARED BY:
Jonathan V. Goodman
Law Offices of Jonathan V. Goodman
788 N. Jefferson Street, Suite 707
Milwaukee, WI 53202
Phone: (414) 276-6760; Fax: (414) 287-1199
Email: JGoodman@ameritech.net